THE STATE OF NEW JERSEY, APPELLEE, *v.* MORALES, APPELLANT.

[Cite as New Jersey v. Morales
(1973), 35 Ohio App. 2d 56.]

(No. 72AP-349—Decided April 17, 1973.)

*Mr. George C. Smith,* prosecuting attorney, for appellee.

*Mr. Stanton G. Darling* and *Mr. Lawrence A. Singer,* for appellant.

HOLMES, J. This is a rather unique appeal of a judgment of the Court of Common Pleas of Franklin County, division of domestic relations, involving an action brought in the state of New Jersey pursuant to the Uniform Reciprocal Enforcement of Support Act.

The facts in brief are that Consuelo and Rene Morales were married in Columbus, Ohio, in 1966. In 1970, Consuelo, the wife, brought an action for divorce against her husband, Rene, in Franklin County, Ohio, alleging in her complaint that two children, whose ages at that time were four years and three months, had been born of such marriage. Parenthetically, it might be noted that a third child was born during this marriage, but subsequent to the filing of the complaint.

The parties thereafter resumed their marital relationship, but the wife, in 1971, filed a supplemental complaint in divorce, and the husband, Rene, filed a cross-complaint seeking a divorce and custody of the children.

The court of domestic relations ordered temporary custody to the wife with visitation rights to the husband. There was also an order that Rene pay temporary support for the children, and temporary alimony for the wife. Subsequent to such order, Consuelo moved out of the jurisdiction of the court, taking the children of the parties with her.

Upon the motion of Rene, and after a hearing thereon, the court found Consuelo guilty of contempt of court in that she had failed to follow the order of the court granting Rene visitation rights. The order in contempt provided that Consuelo could purge herself of contempt by returning the minor children of the parties to the jurisdiction of the court by October 27, 1971.

On November 5, 1971, upon the motion of Consuelo for a reconsideration of the prior order in contempt, and after a hearing thereon, the domestic relations court entered a further order, effective December 15, 1971, that Consuelo return the minor children to the jurisdiction of the court. Such order further provided that in the event Consuelo did not comply, she would be required to serve a ten-day sentence in the workhouse.

It would appear from the record that Consuelo has never returned to Franklin County since the release of the order, and that the children were never returned to the jurisdiction of the Franklin County court.

Of importance within the facts presented is that on March 6, 1972, Mr. Morales was granted a decree of divorce from Mrs. Morales. Mr. Morales was also awarded the care, custody, and control of the minor children of the parties.

The decree of divorce also ordered that the prior temporary child support order, as well as the temporary alimony order, be terminated forthwith.

On January 27, 1972, Consuelo executed and filed a complaint against Rene pursuant to the Uniform Reciprocal Enforcement of Support Act within the juvenile and dom-

estic relations court of Monmouth County, New Jersey.

Consuelo, in support of her complaint, testified that there was a support order against Rene in the Franklin County Court of Common Pleas. It should be noted that at the time of the filing of the complaint in New Jersey, on January 27, 1972, the divorce decree awarded to Mr. Morales had not been entered and there had not been any other order prior thereto which had terminated the temporary support as granted by the prior preliminary order. So the statement Mrs. Morales signed at that time was a correct one, according to the records of the common pleas court.

The juvenile and domestic relations court of Monmouth County, thereafter, entered a finding that Rene be compelled to answer the complaint, and ordered that certified copies of the complaint and proceedings be certified to the Attorney General of Ohio pursuant to law.

At the hearing in the Franklin County Court of Common Pleas, division of domestic relations, upon the matter certified by the New Jersey court, Mr. Morales testified that he has ever remained ready and desirous of obtaining physical custody of his minor children and paying for their necessary support, but he has been unable to enjoy such custody and care because Mrs. Morales has refused to return the chidren to this jurisdiction.

After the hearing, the court entered an order against Mr. Morales for support of the minor children, such order being in the amount of $30 per week, plus poundage, and costs.

The judgment of the trial court was, in the main, based upon the theory that where a state is granting welfare payments on behalf of minor children, the one primarily responsible, the father, should reimburse the state for such support.

The trial court, in its decision from the bench, stated that the legal principle which determined this case was to be found within *Porter* v. *Porter* (1971), 25 Ohio St. 2d 123.

We believe that the law as pronounced in *Porter* v.

*Porter* would require a contrary finding on the facts presented herein.

Justice Schneider in *Porter* pointed out, at page 126 in the opinion, the nature and purpose of the Uniform Reciprocal Enforcement of Support Act by way of setting forth the language as contained in two prior cases on the subject as follows:

"As stated in the syllabus of *Levi* v. *Levi* (1960), 170 Ohio St. 533: 'The Uniform Reciprocal Enforcement of Support Act. . . is a measure designed to afford a practical method, in addition to other remedies, to enforce the legal obligation to support a dependent or dependents by *one who has left the state* in which the dependents reside. . . .' (Emphasis supplied.)

"See, also, *Skinner* v. *Fasciano* (1956), 75 Ohio Law Abs. 409, in which the court, through Judge Skeel, held that:

" 'The purpose of the Support of Dependents Act is to enforce the civil liability against one who is in default of his obligation of support imposed by law *and who has left the jurisdiction of the state* where those who are entitled to the support reside, thereby obviating the necessity of subjecting the one charged with default of such support of being arrested and extradited to the jurisdiction of the default under the criminal law.' (Emphasis supplied.)"

The facts in *Porter* involved what Justice Schneider referred to as a "roving" mother who had left her husband and taken the children of the parties to Idaho, where she filed a custody action, and in an *ex parte* proceeding was awarded temporary custody of such children.

The husband subsequently brought a divorce action in Muskingum County, Ohio, and was granted a divorce on the grounds of gross neglect of duty. The decree made no reference to custody or support. After the divorce, the husband stopped making support payments for the children, which he had been making to the wife during the pendency of his action. The divorced wife brought proceedings in Idaho pursuant to the Uniform Reciprocal Enforcement of Support Act. When the order of the Idaho

court was certified to Muskingum County, the common pleas court held that the father had no duty to support the children in that the mother would not permit reasonable visitation by the father.

The court of appeals reversed the common pleas court, but the Supreme Court of Ohio reversed the court of appeals, setting forth the following principles of law in the syllabus:

"3. The need of a child for visitation with a separated parent is a natural right of the child, and is as worthy of protection as is the parent's right of visitation with the child; thus, the failure, without just cause, of a divorced or separated parent having custody of a child to accord visitation rights to the other parent is not only an infringement of the other parent's right to visitation but is also an infringement of the child's right to receive the love, affection, training and companionship of the parent.

"4. Where a father and his children have been deprived of their rights of visitation with each other by the mother's removal of the children from this state without the father's consent, the trial court may condition the father's duty to support the children upon the mother's compliance with reasonable visitation privileges, unless the mother is unable fully to support the children."

It should be noted that in *Porter* the mother had been awarded custody by an order of the Idaho court, whereas, in the case before this court, the custody had been awarded to the father, Mr. Morales. We highlight such point because in *Porter* the court stated at page 29 of the opinion, that, "the trial court may condition the father's duty to support the minor children upon the mother's compliance with reasonable visitation privileges, *unless the mother is unable fully to support the children* * * *." (Emphasis added.)

This poses the question where, in a case presenting facts similar to those before us, if the father is granted custody, but the mother, who is outside the jurisdiction of the court, is unable to fully support such children, must the receiving court in such an enforcement action enter an order of support against the father who had been awarded custody?

We think not. Agreeing with the principle that the trial court may condition the payment of support for the children of separated or divorced parents upon the return of the children to the court's jurisdiction for purposes of visitation by the obligor father, we hold, with even greater emphasis, that a trial court may deny an order of support sought against one to whom custody has been previously ordered, but which order of custody has been thwarted by the act of the other parent.

The right of custody is one of the most, if not the most, serious and important rights dealt with by the court in a domestic relations action. The award of such right of custody, either temporary or permanent, should not be flaunted or thwarted by the actions of one of the parties. While it is true that the welfare of the children should ever be the prime concern of the court, the custodial right as granted to one or the other of the parents should also be a continuing concern of the courts.

Unfortunate as it may be in some instances, the practicalities of the matter of some situations require the use of the monetary leverage to effectuate the legal determinations of our judicial tribunals. In just such an instance, as pointed out by Justice Schneider in *Porter*, a case brought under the Uniform Reciprocal Support Act in the state of New Jersey, the Supreme Court of New Jersey, in *Daly* v. *Daly* (1956), 39 N. J. Super. 117 at 124, 120 A. 2d 510, 513, while affirming a lower court, stated:

"One of the devices used by the courts to give effectiveness to a father's visitation rights, where the children have been taken out of the state by a mother to a place so distant as in effect to destroy such rights, is to reduce, discontinue or suspend an existing order for the support of the children until the children are returned or until in some other fashion the father's visitation rights can be fully protected." Affirmed, 21 N. J. 599, 123 A. 2d 3. Accord: annotation, 95 A. L. R. 2d 118, 147, Section 8.

Justice Schneider, in his opinion, distinguished the facts in *Porter* from those of the cases of *Bowen* v. *The State* (1897), 56 Ohio St. 235, and *Fulton* v. *Fulton* (1895), 52 Ohio St. 229, where recovery was ordered as against

the father. It was pointed out by Justice Schneider that the latter two cases had presented fact situations showing that the children were, or were about to become, public charges.

We recognize that the fact situation in the present case does show that the mother is unable to fully support such children, but yet the father has consistently held himself ready to accept the custody, as well as the attendant responsibilities of the support, of such children. It is not the father's desire that these children be public charges.

Having discussed *Porter,* we hasten to state at this juncture of our decision that one of the main supports in the foundation of that opinion may no longer stand. The court, in *Porter,* set forth the following law in the second paragraph of the syllabus:

"2. A wife, who has breached the duty imposed upon her by R. C. 3103.02 to conform to her husband's place of living, may not claim the benefit of R. C. 3103.03, which imposes upon a husband the absolute duty to support his wife and family."

*Porter* was decided February 24, 1971. On October 27, 1971, a new section of law, R. C. 3115.03, became effective. That section reads as follows:

"Duties of support imposed by the law of this state, when applicable under section 3115.06 of the Revised Code, bind the obligor present in this state regardless of the presence or residence of the obligee."

It can readily be seen that under such section the duties of support imposed by the law of this state, *when applicable under R. C. 3115.06,* bind the obligor present in this state regardless of the presence or residence of the obligee.

R. C. 3115.06, which determines the state law applicable to these types of cases, is as follows:

"Duties of support applicable under sections 3115.-01 to 3115.34, inclusive, of the Revised Code, are those imposed under the laws of any state where the obligor was present for the period during which support is sought. The obligor is presumed to have been present in the re-

sponding state during the period for which support is sought until otherwise shown.''

Our view of these sections of law results in the conclusion that Ohio law with regard to what constitutes the duty to support the minor children of the parties must be applied. Where there is a judicial order relating to the custody of minor children, that order has the effect of law and is .that which should determine the obligations of the respective parents to their minor children.

The duty of the support of these minor children, and the validity of any determination of such duty, is necessarily based upon any existing law or court order relating to the status of the child and parent from whom such support is sought.

Here, we find that there is no duty on a father to make payments to the mother for the support of the minor children of the parties where the father has obtained a prior order of custody, and the mother, contrary to such order of custody, has removed the children out of the court's jurisdiction.

The judgment of the Franklin County Court of Common Pleas, division of domestic relations is hereby reversed, and this cause is remanded to such court for further proceedings according to this decision, and law.

*Judgment reversed.*

REILLY and WHITESIDE, JJ., concur.

WHITESIDE, J., concurring separately. While I concur in the judgment, I feel some additional comments are germane.

Contrary to some indication in the record, including the style of the case, the complainant herein is Consuelo Morales not the state of New Jersey. While, pursuant to R. C. 3115.07, a state may institute a similar action ''for the purpose of securing reimbursement for support furnished and of obtaining continuing support,'' the state of New Jersey has not done so in this action.

The obligee in this action is Consuelo, not the state of New Jersey or the minor children on whose behalf the action could have been brought pursuant to R. C. 3115.11. Subsequent to the decision in *Porter* v. *Porter* (1971), 25 Ohio St. 2d 123, the legislature amended R. C. 3115.21 to provide:

"* * * The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court."

This is a recognition and adoption of the *Porter* doctrine, but with a limitation. Thus, defendant's duty to support his children is unaffected by Consuelo's interference with his right of custody. However, Consuelo, as an obligee, is not permitted to require defendant to pay her for the support of the children while she interferes with his right of custody.

There is no indication that Consuelo is unable to support the minor children. She apparently is doing so. The source of the funds she uses for such support is not important. While the record indicates that in January 1971, she was unemployed and had no source of income except "public assistance," there is no presumption that that continued to be the situation. There is no finding to that effect in the certificate of the New Jersey court. Likewise, there is no indication whether the support payment, if made by defendant would be in lieu of, or in addition to, the "public assistance" if it has continued. Furthermore, the record is devoid of any indication of the assets of Consuelo, or the absence thereof.

Under these circumstances, the rule of *Porter* is applicable. The state of New Jersey is required to give full faith and credit to the Ohio decree granting custody of the minor children to defendant. We assume New Jersey courts will do so if the matter is brought to their attention in the proper manner. It would appear from the record that the New Jersey court was unaware of the Ohio decree.