STATE OF LOUISIANA EX REL. Patricia A. EATON, Petition-
er-Appellant,

v.

Lambert Howard LEIS, Respondent.

Court of Appeals

*No. 83–1815. Submitted on briefs July 15, 1984.—
Decided July 6, 1984.*
(Also reported in 354 N.W.2d 209.)

 

For the petitioner-appellant the cause was submitted on the brief of *David L. Jenkins* of Viroqua.

For the respondent the cause was submitted on the brief of *Roger L. Imes* and *Hale, Skemp, Hanson & Skemp* of La Crosse.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J. This is an appeal from an order dismissing a case brought under sec. 52.10, Stats., Wisconsin's version of the Revised Uniform Reciprocal Enforcement of Support Act (URESA). Because the trial court erred in concluding it did not have subject matter jurisdiction to order respondent to pay support, we reverse.

The issue is whether a Wisconsin resident with legal but not physical custody of his or her children may be required to pay child support to the children's other parent residing in another state with the children.

Because neither party filed a transcript, we must ignore some facts alleged in the parties' briefs, for we can only decide this case on the record before us. Where the record is incomplete, this court's review is limited to whether the record as filed sustains the judgment. *Klug & Smith Co. v. Sommer*, 83 Wis. 2d 378, 388, 265 N.W.2d 269, 273 (1978).

Patricia and Lambert Leis were divorced in 1978 in Monroe County, Wisconsin. Lambert was given custody of the parties' minor children. In April 1983, Patricia filed a URESA petition in the Juvenile Court for Vernon Parish, Louisiana.[1] In her petition she stated that she

---

[1] La. Rev. Stat. Ann. sec. 13:1668 (West 1983) provides in part:

If the initiating court finds that the petition sets forth facts from which it may be determined that the obligor owes a duty of support and that a court of the responding state may obtain jurisdiction of the obligor or his property it shall so certify and cause three copies of the petition and its certificate and one copy of this

has had custody of the children since May 25, 1981, and that she and the children are in necessitous circumstances and are in need of support from Lambert. The Juvenile Court certified the petition and sent it to the circuit court for Vernon County, Wisconsin. The circuit court ordered Lambert to show cause why he should not pay support for his minor children. After a hearing, the circuit court concluded it did not have subject matter jurisdiction because the Monroe County divorce judgment gave custody of Lambert's minor children to him. It dismissed the order to show cause.

## SUBJECT MATTER JURISDICTION

■
The Vernon County Circuit Court had subject matter jurisdiction. In *Mueller v. Brunn,* 105 Wis. 2d 171, 176, 313 N.W.2d 790, 792 (1982), the court said: "As we stated in *Matter of Guardianship of Eberhardy,* 102 Wis. 2d 539, 307 N.W.2d 881 (1981), subject matter jurisdiction is vested by the constitution in the courts of the State of Wisconsin. No circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever."

## DUTY TO SUPPORT

Section 52.10 (24), Stats., provides in part:[2]

Part to be sent to the responding court. Certification shall be in accordance with the requirements of the initiating state. If the name and address of the responding court is unknown and the responding state has an information agency comparable to that established in the initiating state, it shall cause the copies to be sent to the state information agency or other proper official of the responding state, with a request that the agency or official forward them to the proper court and that the court of the responding state acknowledge their receipt to the initiating court.

[2] Under both states' versions of URESA, the Louisiana court is termed the "initiating court," and the Wisconsin court the "re-

If the responding court finds a duty of support it may order the obligor to furnish support or reimbursement therefor and subject the property of the obligor to the order. . . .

Section 52.10 (2) (b), Stats., defines "duty of support":

"Duty of support" means a duty of support *whether imposed or imposable* by law or by order, decree or judgment of any court, whether interlocutory or final or whether incidental to an action for divorce, separation, separate maintenance or otherwise and includes the duty to pay arrearages of support past due and unpaid. [Emphasis added.]

Neither party asserts that a duty of support has been imposed on Lambert. The only question we face, therefore, is whether a duty of support could be imposed on him. A duty of support could be imposed on Lambert if a court could award legal custody of the children to Patricia. The question whether support is imposable on Lambert is determined under Wisconsin law. Sec. 52.10 (7), Stats.[3]

We conclude that a duty of support could be imposed on Lambert. There is nothing of record to controvert Patricia's statement in her petition that she has had custody of the parties' children since May 25, 1981. Additionally, a state other than Wisconsin *could* properly give custody of the children to Patricia.

La. Rev. Stat. Ann. sec. 13:1702 (West 1983), part of Louisiana's enactment of the Uniform Child Custody Jurisdiction Act, provides:[4]

---

sponding court." La. Rev. Stat. Ann. sec. 13:1642(d), (m) (West 1983) ; sec. 52.10(2) (d), (kz), Stats.

[3] Section 52.10(7), Stats., provides in part:

Duties of support applicable under this section are those imposed under the laws of any state where the obligor was present for the period during which support is sought. . . .

[4] The Uniform Child Custody Jurisdiction Act has been enacted in forty-nine states, including Wisconsin, and the District of Columbia. 9 U.L.A., 1984 Supp. at 19.

A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state (i) is the home state of the child at the time of the commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;[5] or

(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4) (i) It appeals that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

B. Except under Paragraphs (3) and (4) of Subsection A, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

---

[5] "Home state" is defined in La. Rev. Stat. Ann. sec. 13:1701 (5) (West 1983):

"Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months. . . . Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

C. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

Section 822.03(1), Stats., part of Wisconsin's enactment of the UCCJA, is nearly identical to La. Rev. Stat. Ann. sec. 13:1702. A custody jurisdiction dispute between the courts of Louisiana and Wisconsin *could* be resolved in favor of the Louisiana court. Louisiana therefore could validly give custody of the parties' children to Patricia. If it did so, Wisconsin would recognize Louisiana's judgment or decree. Sec. 822.13, Stats.[6] A duty of support therefore is *imposable* on Lambert under Wisconsin law, and the trial court should have entered a support order.

Our conclusion is not altered by the fact that Patricia may have removed the children from Lambert's custody in violation of a court order. In *State ex rel. Hubbard v. Hubbard,* 110 Wis. 2d 683, 329 N.W.2d 202 (1983), a father resisted support payments ordered by a California court after his ex-wife removed their children to California without the permission of the Wisconsin courts. After removal, the trial court granted legal custody to the father. He then resisted his ex-wife's URESA action for support, partly because she had flouted the Wisconsin custody order. The supreme court said: "Since a support obligation is unaffected by the misconduct of the custodial parent, matters of visitation, custody, and contempt are of no concern in a URESA proceeding. Indeed, the express language of the URESA limits the respond-

---

[6] Chapter 822, Stats., is Wisconsin's enactment of the Uniform Child Custody Jurisdiction Act. Section 822.13 provides:

The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jursdiction under statutory provisions substantially in accordance with this chapter or which was made under factual circumstances meeting the jurisdictional standards of this chapter, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this chapter.

ing court's subject matter jurisdiction to support."
(Footnote omitted.) *Id.* at 690, 329 N.W.2d at 206. Stating that the ex-wife's flouting of the Wisconsin order "is deplorable," the court said that her actions "are not proper matters for consideration under the URESA." The court held that the ex-wife could properly bring the URESA support action. *Id.* at 692–93, 329 N.W.2d at 207.

The ex-wife in *Hubbard* removed the children from Wisconsin while she had custody of them. In this case, the record is silent as to the circumstances surrounding the children's removal from Wisconsin and whether they went to Louisiana with or without their father's permission. The unknown facts are irrelevant, however in light of the supreme court's statement that custody matters are of no concern in a URESA proceeding. We are bound by prior decisions of the Wisconsin Supreme Court. *State v. Olsen,* 99 Wis. 2d 572, 583, 299 N.W.2d 632, 638 (Ct. App. 1980).

It cannot be said that the statements in *Hubbard* making custody matters irrelevant in an URESA proceeding are dicta. Matters not decisive to the primary issue presented but germane to that issue are not *dictum,* and are a judicial act of the court which it will recognize as a binding decision. *State v. Kruse,* 101 Wis. 2d 387, 392, 305 N.W.2d 85, 88 (1981), citing *Chase v. American Cartage Co.,* 176 Wis. 235, 238, 186 N.W. 598, 599 (1922). The *Hubbard* court's reference to the separation of support and custody matters, repeated three times and supported by authority, was germane to the issue decided.

We recognize that some courts have held that non-custodial parents who remove children from the custodial parent may not maintain URESA actions.[7] We are not

---

[7] *See, e.g., Hethcox v. Hethcox,* 246 S.E.2d 444 (Ga. Ct. App. 1978) (custodial father need not pay support to non-custodial mother who wrongfully removes children from jurisdiction). *See*

persuaded by these opinions. A child should not be punished for its parent's misconduct.[8] Even children "stolen" by a non-custodial parent need food, clothing and shelter. A parent with ability to provide support should be required to do so. Parents may litigate custody matters when they choose, but children's need for support is immediate. *Monson v. Monson*, 85 Wis. 2d 794, 800-01, 271 N.W.2d 137, 140 (Ct. App. 1978).

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.

BABLITCH, J. *(dissenting).* I believe the trial court correctly concluded it had no power to order the custodial parent to pay child support in a URESA action, and would therefore affirm its judgment dismissing the petition.

The record does not contain a transcript of the proceeding before the trial court because the appellant certified to this court that a transcript was unnecessary to decide the issue before us. The trial court's findings of fact are not challenged, however, and this court is not free to ignore them.

The trial court found that a Wisconsin divorce decree awarded custody of the children to their father, and that the mother has present physical custody. It then found as follows:

3. That the [father] gave the physical custody of the minor children to [the mother] solely for the purpose of transporting those children to the home of their maternal

also *People ex rel. Oetjen v. Oetjen*, 416 N.E.2d 278, 283 (Ill. Ct. App. 1980) (support abatement order prevents entry of URESA order); *Campbell v. Campbell*, 617 P.2d 66, 68 (Ariz. Ct. App. 1980) (mother retaining physical custody in violation of custody order lacks standing to bring URESA action for support).

[8] A custodial parent whose child is "stolen" by a non-custodial parent is not without a remedy. Section 946.715, Stats., makes "child stealing" a felony.

grandparents in the State of Kansas; that the grandparents had agreed to have the children live with them and the [father] and the grandparents had worked out a satisfactory arrangement in all respects; that the children in fact lived with the grandparents for some period of time before being removed by [the mother] without the permission, consent or knowledge of the [father]; that the [father] is ready, willing and able to resume physical custodianship of the minor children.

As I see it, the issue presented by these facts is whether a parent to whom legal custody has been awarded, and whose legal obligation to support the children has thus been adjudicated to be that of providing for their necessities in his or her care, has a legal duty, enforceable under URESA, to pay child support to the other parent who has obtained physical custody without modification of the custody award and without permission of the custodial parent.

No published decision in Wisconsin has addressed this issue. With one exception, the courts which have considered it have concluded that the custodial parent has no legal duty to support which may be enforced through URESA by the noncustodial parent. The exception, *County of Clearwater, Minn. v. Petrash*, 598 P.2d 138 (Colo. 1979), rejected the contention that the mother's refusal to return to the custodial father a child who had travelled to the mother's state of residence to live with her constituted a defense to a URESA action brought by a welfare department in that state. The sole ground of the decision was the familiar rule that a child's right to support is unaffected by the misconduct of a parent. 598 P.2d at 139. Like the majority in this case, the Colorado court emphasized that custody and child support are separate and independent issues. The court did not consider its jurisdiction under URESA to impose a support obligation on a parent having legal custody.

Other courts presented with this factual situation have focused on the limits of their power to make a support order under URESA. *Campbell v. Campbell,* 617 P.2d 66 (Ariz. Ct. App. 1980); *Hethcox v. Hethcox,* 246 S.E.2d 444 (Ga. Ct. App. 1978); *State of New Jersey v. Morales,* 299 N.E.2d 920 (Ohio Ct. App. 1973).

In *Campbell,* the court of appeals held that the non-custodial mother lacked standing to invoke URESA remedies under the Arizona counterpart to sec. 52.10 (13), Stats., which allows a petition on behalf of a minor obligee to be executed and filed "by a person having *legal* custody of the minor." (Emphasis supplied.) It noted that *Petrash* failed to consider this section of the uniform act in allowing the welfare department to invoke the act's enforcement remedies. 617 P.2d at 69 n. 8. It also noted the policy articulated in Arizona's counterpart to sec. 52.10(23) that "[t]he determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court." It stated, however:

This language does not compel an interpretation that the interference with custody by a noncustodial parent can actually *create* a duty of support payable to the interfering parent. Under our holding the appellee-father's duty to support his child is unaffected by appellant's interference with his right of custody. However, appellant *as an obligee* without legal custody is not permitted to create an obligation on appellee's part *to pay child support to her* while she interferes with his right of custody. (Emphasis in original; citation omitted.)

617 P.2d at 69.

In *Hethcox,* the Georgia Court of Appeals reached the same result, even though that state's counterpart of the standing subsection purported to allow "the person having custody" to file a petition on behalf of a minor, omitting the adjective "legal." The court said:

We are constrained to conclude that where the statute requires the furnishing of support for dependent children to the person having custody of those children, the statute reasonably is restricted to that person having lawful custody by virtue of a court order or with the consent of the obligor parent. To hold otherwise would be to reward a physical custodian who is acting in actual defiance of and contrary to the order of a court of the responding state.

246 S.E.2d at 445–46.

Despite its holding on the standing question, the Georgia court proceeded to consider the substantive issue, which it phrased as "whether a parent not having legal custody of dependent children is entitled to support under URESA." 246 S.E.2d at 446. It adopted the rule set by the Ohio Court of Appeals in *State of New Jersey v. Morales, supra,* holding that the custodial parent has " 'no duty' " to pay child support where the noncustodial parent has wrongfully procured physical custody. 246 S.E.2d at 446 (quoting *Morales,* 299 N.E.2d at 924).

The *Morales* "no duty" holding rested on the proposition that the divorce decree awarding custody to the father had already fixed the support obligation as between the parents. The Ohio court stated:

[We conclude] that Ohio law with regard to what constitutes the duty to support the minor children of the parties must be applied. Where there is a judicial order relating to the custody of minor children, that order has the effect of law and is that which should determine the obligation of the respective parents to their minor children.

The duty of the support of these minor children, and the validity of any determination of such duty, is necessarily based upon any existing law or court order relating to the status of the child and parent from whom such support is sought.

299 N.E.2d at 924.

I find the reasoning of these cases compelling. They are not inconsistent with *State ex rel. Hubbard v. Hub-*

*bard,* 110 Wis. 2d 683, 329 N.W.2d 202 (1983), which involved a different issue. In *Hubbard* the mother had legal custody when she removed the children from Wisconsin to California, where she obtained a support order against the father. The question was whether the California order was enforceable in Wisconsin under URESA, and whether the URESA court had jurisdiction to consider the father's defense and counterclaim for custody based on the mother's contempt of the Wisconsin decree's prohibition against removal of the child from the state. The supreme court held that "the support obligation [is] the sole issue before the responding court" in a URESA action, 110 Wis. 2d at 688, 329 N.W.2d at 205, and that such an obligation is "unaffected by the misconduct of the custodial parent." 110 Wis. 2d at 690, 329 N.W.2d at 206. The holding makes sense, and is the law in the vast majority of the jurisdictions which have considered that issue.[1]

The precise issue in this case, though, is whether the misconduct of a *non*custodial parent can, within the jurisdictional confines of URESA, be used to *create* a support obligation from the legal custodian to the absconding other parent, where that obligation has been previously adjudicated to be nonexistent and the adjudication has not been modified. By awarding him custody, the Wisconsin divorce court defined the father's duty of support to be that of providing for his children's necessities while under his care and control. The trial court found that he is presently willing and able to perform that duty. It has been frequently held that the stated purpose of URESA "to improve and extend by reciprocal legislation the enforcement of duties of support," sec. 52.10(1), Stats.,

---

[1] *See e.g., Kline v. Kline,* 542 S.W.2d 499 (Ark. 1976); *Vecellio v. Vercellio,* 313 So. 2d 61 (Fla. Dist. Ct. App. 1975); *Brown v. Turnbloom,* 280 N.W.2d 473 (Mich. Ct. App. 1979); *England v. England,* 337 N.W.2d 681 (Minn. 1983).

means the enforcement of " '*existing* duties of support against persons *legally liable* for such support,' " rather than the creation of new support obligations. *People ex rel. St. Louis v. St. Louis,* 413 N.E.2d 157, 159 (Ill. App. Ct. 1980) (quoting *Moffat v. Moffat,* 612 P.2d 967, 975 (Cal. 1980) (emphasis in original).[2] As the Maryland Court of Special Appeals held in a URESA action brought after a divorce decree had relieved the father of any support obligation:

> Where the decree avoiding the support obligation is not appealed before it becomes enrolled, the propriety of that decree is beyond the jurisdiction of the URESA court . . . and there is no duty to support under the Act. The purpose of the Act is to improve and extend "the enforcement of duties of support." . . . It does not address the creation or resurrection of those duties where none exist or where an existing duty has been relieved . . . .
> Unless and until the divorce decree is modified to resurrect a duty to support, there is no obligation to support imposed or imposable; consequently nothing exists to enforce by a URESA action. (Citations omitted.)

*Chance v. LaPausky,* 402 A.2d 1329, 1331 (Md. Ct. Spec. App. 1979).

Because the father in this case is willing to comply with the only duty to support which he owes—that of supporting the children in his custody—the trial court

---

[2] *State ex rel. Arvayo v. Guerrero,* 517 P.2d 526, 529 (Ariz. Ct. App. 1973) (since order terminating father's support obligation was not appealed, it was "beyond the jurisdiction" of the URESA court, and mother had no right to a remedy under the uniform act); *Ray v. Pentlicki,* 375 So. 2d 875, 878 (Fla. Dist. Ct. App. 1979) (father's duty of support was "circumscribed" by order suspending payments entered by divorce court, regardless of propriety of that order); *accord People ex rel. Oetjen v. Oetjen,* 416 N.E.2d 278, 283 (Ill. App. Ct. 1980) ("once a child support obligation has been abated by a post-judgment order in the divorce action, there remains no duty of support which may be enforced through the remedies available under URESA").

has no power under URESA to impose a different duty absent a modification of the custody award. Whether this conclusion is phrased in terms of the noncustodial mother's lack of standing, or of the court's own lack of jurisdiction, the result is the same. Without a modification of the custody decree, no duty to pay support to the children's mother is imposed or imposable, and there is nothing for URESA to enforce.

The possibility that some other state might award custody to the mother under the Uniform Child Custody Act is immaterial. There is no suggestion in the record that a change in legal custody was ever sought in any state. The facts of record are insufficient to determine whether Louisiana, or any state, would have jurisdiction to make such an award. I would hold that until some court with the power to do so modifies the Wisconsin custody decree, the mother has no right to any remedy provided by URESA.