162 Wis.2d 431 (1991)
469 N.W.2d 881
IN the INTEREST OF K.K. and T.K.:
ROCK COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant,
v.
K.K. and T.K., by Brian C. Schneider, Guardian Ad Litem, Co-Appellants,
v.
C.D.K., Respondent.[]
No. 89-1845.
Court of Appeals of Wisconsin.
Oral argument November 15, 1990.
Decided April 11, 1991.
*434 For the appellant the cause was submitted on the briefs of David Heitzman, assistant corporation counsel of Janesville, and orally argued by David Heitzman.
For the co-appellant the cause was submitted on the briefs of Brian C. Schneider of the Bell Law Offices, S.C., and orally argued by Brian C. Schneider.
For the respondent the cause was submitted on the briefs of Ruth S. Downs, assistant state public defender of Madison, and orally argued by Ruth S. Downs.
Before Eich, C.J., Dykman and Sundby, JJ.
DYKMAN, J.
This is an appeal from an order dismissing Rock County's petition to terminate C.D.K.'s parental rights to K.K. and T.K.[1] The trial court initially determined C.D.K.'s parental rights should be terminated. Upon reconsideration, however, the court concluded that, because only two of six dispositional orders contained the warnings required by sec. 48.356, Stats.,[2] *435 the county could not establish that grounds existed under sec. 48.415, Stats., for termination of parental rights. We conclude that, in termination cases for abandonment under sec. 48.415(1), Stats., only a single order need include the warnings.
As alternative grounds for upholding the trial court's dismissal of the county's petition, C.D.K. argues: (1) that his actions did not satisfy the criteria for abandonment under sec. 48.415(1), Stats; (2) that the trial court did not exercise its discretion in originally determining that C.D.K.'s rights should be terminated; (3) that he was denied effective assistance of counsel; and (4) that we should exercise our discretionary reversal authority to reverse the trial court's initial order. We reject each of these arguments and reverse.

I. BACKGROUND
On June 9, 1986, the trial court entered dispositional orders concerning C.D.K.'s two children, K.K. and T.K. The court found that under sec. 48.415(1), Stats.,[3] they had been abandoned by C.D.K. and their mother, *436 D.K.,[4] and were in continuing need of protection and services under sec. 48.415(2), Stats.[5]
As required by sec. 48.356, Stats., the June 9 orders contained a warning, stating in part:
The parents are hereby notified that grounds may exist for the termination of their parental rights to the child in a new and separate proceeding if the child remain[s] outside their home pursuant to this order and any subsequent orders:
A. And the parents fail to visit or communicate with the child for a period of six months or longer . . ..
In September 1986, C.D.K. was convicted of armed robbery. He was sentenced to ten years in prison. On October 27, 1986, the court entered orders extending the June 9 dispositional orders. On February 16, 1987, the court entered orders revising the June 9 orders. None of the latter orders contained sec. 48.356, Stats., warnings.
On August 10, 1987, the county filed petitions for termination of C.D.K.'s parental rights alleging that he had abandoned his children and that they were in continuing need of protection or services. The petitions were consolidated and tried to a jury. The jury returned *437 special verdicts, finding: (1) that C.D.K. had abandoned K.K. and T.K.; (2) that the children were in continuing need of protection and services; and (3) that C.D.K. was unfit to function as a parent to the children. The trial court entered orders terminating C.D.K.'s parental rights on July 19, 1988.
C.D.K. moved for reconsideration, arguing that the trial court's decision was in conflict with In re D.F., 147 Wis. 2d 486, 433 N.W.2d 609 (Ct. App. 1988).[6] C.D.K. argued that, because the October 27 and February 16 dispositional orders did not contain the warnings required by sec. 48.356, Stats., the county could not establish continuing need of protection or services under sec. 48.415(2), Stats., or abandonment under sec. 48.415(1), Stats. The court reconsidered and dismissed the termination petitions. The county and the guardian ad litem for K.K. and T.K. appeal.

II. SECTION 48.356, STATS.
In D.F., the trial court entered four dispositional orders, none of which contained sufficient warnings to satisfy the requirements of sec. 48.356(2), Stats. Id. at 496-97, 433 N.W.2d at 612-13.[7] The county had petitioned for termination of the mother's parental rights on the grounds that, under sec. 48.415(2), Stats., the children were in continuing need of protection or services. Id. at 490, 433 N.W.2d at 610. Relying on the language of sec. 48.415(2), we concluded that "a continuing need for *438 protection and services can be a basis for involuntary termination of parental rights only if the statutory warning required by sec. 48.356(2), Stats., is given each time an order places a child outside his or her home pursuant to secs. 48.345, 48.357, 48.363 or 48.365." Id. at 498-99, 433 N.W.2d at 613-14 (emphasis added).
The June 9 orders contained the notice required by sec. 48.356, Stats. C.D.K. contends, however, that under D.F., all six orders must satisfy those requirements. We disagree.
D.F. concerned a termination petition alleging a continuing need of protection or services, sec. 48.415(2), Stats. C.D.K.'s petition contained an identical allegation. However, the jury also found that K.K. and T.K. had been abandoned, sec. 48.415(1), Stats. The language of the two subsections of sec. 48.415 is dissimilar.
Section 48.415(2)(a), Stats., requires the state establish "[t]hat the child has been adjudged to be in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under s. 48.345, 48.357, 48.363 or 48.365 containing the notice required by s. 48.356(2)." (Emphasis added.) Section 48.415(1)(a)2, however, requires only that "[t]he child has been placed, or continued in a placement, outside the parent's home by a court order containing the notice required by s. 48.356(2) and the parent has failed to visit or communicate with the child for a period of 6 months or longer . . . ." (Emphasis added.)
[1]
These two subsections impose different requirements under sec. 48.356, Stats. Under sec. 48.415(1), Stats., a single notification meeting the requirements of *439 sec. 48.356, Stats., is sufficient.[8] We believe this interpretation is also rational. Section 48.415(1) addresses different concerns than sec. 48.415(2), Stats. A petition under 48.415(2) states that the child is in continuing need of protection or services. A petition under 48.415(1), however, alleges that the child has been abandoned.
[2]
As we noted in D.F., the legislature is free, subject to constitutional limitations, to prescribe the grounds for involuntary termination of parental rights. Id. at 498, 433 N.W.2d at 613. It is also free to vary the procedure used when termination is sought for various reasons. We would usurp the prerogatives of the legislature were we to engraft the procedures set out in sec. 48.415(1)(a), Stats., onto the requirements of sec. 48.415(1)(a)2, Stats.
C.D.K. argues that this interpretation of sec. 48.415(1)(a)2, Stats., ignores sec. 48.356(2), Stats., which provides:
In addition to the notice required under sub. (1), any written order which places a child outside the home under sub.(1) shall notify the parent or parents of the information specified under sub. (1).
We disagree. Section 48.415(1)(a)2, Stats., incorporates only the notice or warnings of sec. 48.356(2), Stats., not the procedure of that section.
*440 [3]
Because one of the grounds relied on by the trial court for termination of C.D.K.'s rights was abandonment under sec. 48.415(1), Stats., and because the June 19 dispositional orders contained the required warnings, we conclude the trial court erred by dismissing the action upon reconsideration.[9]

III. ALTERNATIVE REASONS FOR AFFIRMING THE TRIAL COURT

A. SECTION 48.415(1)(b), STATS.
[4]
The February 16 orders deleted the requirement that the county afford opportunities for C.D.K. to visit his children, eliminated return conditions, and directed C.D.K. to comply with the county's plan calling for termination of his parental rights. C.D.K. argues that because the February 16 orders prohibited him from having contact with his children, the time after entry of that order may not be used as evidence of abandonment under sec. 48.415(1)(a)2, Stats. We agree.
[5]
Section 48.415(1)(b), Stats., provides in part: "The time periods under para. (a)2 or 3 shall not include any periods during which the parent has been prohibited by judicial order from visiting or communicating with the *441 child." However, C.D.K. last visited his children on June 26, 1986. Under sec. 48.415(1)(a)2, Stats., he had abandoned them on December 25, 1986, long before the February 16 orders were entered.

B. ABUSE OF DISCRETION
[6]
C.D.K. argues that the trial court abused its discretion by failing to exercise its discretion when it terminated his parental rights. Notwithstanding the jury's verdict, the trial court must exercise its discretion to decide whether parental rights should be terminated. In re J.L.W., 102 Wis. 2d 118, 131, 306 N.W.2d 46, 52 (1981). C.D.K. does not explain how the trial court abused its discretion, other than to suggest that the children could have been left in their foster home and that he could have visited them without the necessity of termination of his parental rights.
[7]
We are limited in our discussion of this issue because the trial court's explanation of its reasons for terminating C.D.K.'s parental rights is not of record. We therefore review this issue to determine whether the record as filed sustains the judgment. State of Louisiana ex rel. Eaton v. Leis, 120 Wis. 2d 271, 272, 354 N.W.2d 209, 210 (Ct. App. 1984). We conclude that it does.
A social worker testified that C.D.K. had a limited understanding of what his children needed from him as a parent, that the children had no particular feelings toward C.D.K., and that C.D.K. had problems with arrests and incarceration. A psychiatrist testified that C.D.K. suffered from an antisocial personality disorder which was unlikely to improve.
*442 [8]
We conclude that from this testimony, and the fact that C.D.K. was then serving a ten-year prison sentence which made the opportunity for a change in his prognosis even more bleak, the trial court could rationally conclude that C.D.K.'s parental rights should be terminated. Its decision to do so was not an abuse of discretion.

C. DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL
C.D.K. argues that he was denied his constitutional and statutory right to effective assistance of counsel. Although he concedes that the federal constitution does not require that counsel be appointed for parents in termination of parental rights cases, see Lassiter v. Department of Social Services of Durham County, 452 U.S. 18, 31-32 (1981), he argues that because the Wisconsin legislature has given parents a right to counsel,[10] failure to ensure that counsel is effective denies his right to due process. See Evitts v. Lucey, 469 U.S. 387, 400-02 (1985).
[9]
Assuming, without deciding, that C.D.K. has a federal due process right to effective assistance of counsel,[11] *443 we conclude that the three allegations of ineffective assistance of counsel identified by C.D.K. do not constitute ineffective assistance as a matter of law.
C.D.K. asserts that his attorney was ineffective because he did not bring to the jury's attention the fact that C.D.K. had not received the required warnings in the October 27 and February 16 orders. As we previously indicated, sec. 48.356, Stats., did not require warnings in either of those orders.
C.D.K. next contends that for nearly all of the six months prior to the filing of the petition for termination of parental rights, the February 16 orders relieved the county of the requirement that it arrange visits between C.D.K. and his children. He concludes that his attorney's failure to bring this fact to the jury's attention constituted ineffective assistance of counsel. However, as we have explained, by the time the February 16 orders were signed, six months of non-communication had expired.
Finally, C.D.K. asserts that his attorney's performance was ineffective because he failed to assert the unconstitutionality of sec. 48.415(1)(b), Stats., which provides, in part, that "[i]ncidental contact between parent and child shall not preclude the court from finding that the parent has failed to visit or communicate with the child under par. (a)2 or 3." C.D.K. claims that the term "incidental contact" offends due process.
"The concept of vagueness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication." State ex rel. Hennekens v. City of River Falls Police & Fire Comm., 124 Wis. 2d 413, 420, 369 N.W.2d 670, 674 (1985). Although C.D.K. posits three different meanings for "incidental contact""by chance," "as a minor consequence," and "lacking in effect or consequence"all *444 three definitions convey the meaning that a parent may not rely upon insignificant meetings between parent and child as a defense to an abandonment claim. "A fair degree of definiteness is all that is required to uphold a statute or regulation, and a statute or regulation will not be voided merely by showing that the boundaries of the area of proscribed conduct are somewhat hazy." Hennekens, 124 Wis. 2d at 420, 369 N.W.2d at 674 (citation omitted). We conclude the phrase "incidental contact" is sufficiently unambiguous. Therefore, C.D.K.'s attorney cannot be deemed ineffective for failing to assert a vagueness challenge that would have been unsuccessful.

D. DISCRETIONARY REVERSAL
C.D.K. requests that we exercise our discretionary reversal authority under sec. 752.35, Stats., because the jury was not informed about the failure to give him the termination warnings or that the October 27 orders eliminated the requirement that the county make visitation arrangements for C.D.K., and the February 16 orders eliminated return conditions for the children.
[10]
In this case, the real controversy was fully tried. See Vollmer v. Luety, 156 Wis. 2d 1, 19, 456 N.W.2d 797, 805 (1990). Nor do we find that justice has miscarried because we cannot conclude that a new trial would produce a different result. Id. We therefore decline C.D.K.'s request that we exercise our discretionary reversal authority.
By the Court.Order reversed and cause remanded with instructions to reinstate the order terminating C.D.K.'s parental rights.
*445 SUNDBY, J. (dissenting).
I disagree with the majority's attempt to distinguish In re D.F., 147 Wis. 2d 486, 433 N.W.2d 609 (Ct. App. 1988). The trial court's duty under sec. 48.365, Stats., to inform the parent is not affected by the grounds for termination of parental rights. In In re D.F., we said:
We conclude that the trial court's duty to warn and inform a parent under sec. 48.356(2), Stats., is included in that "panoply of substantive rights and procedures to assure that . . . parental rights will not be terminated precipitously [or] arbitrarily . . . ." M.A.M., 116 Wis. 2d at 437, 342 N.W.2d at 412. The statute is mandatory, unequivocal and imperative.
Id. at 495, 433 N.W.2d at 612.
Section 48.356, Stats., provides:
(1) Whenever the judge orders a child to be placed outside his or her home because the child has been adjudged to be in need of protection or services under s. 48.345, 48.357, 48.363 or 48.365, the judge shall orally inform the parent or parents who appear in court of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child to be returned to the home . . . .
(2) In addition to the notice required under sub. (1), any written order which places a child outside the home under sub. (1) shall notify the parent or parents of the information specified under sub. (1).
In In re D.F., we held that sec. 48.356, Stats., required that the trial court give the required notice of possible termination of parental rights whenever it made a CHIPS order placing or continuing a child in a placement *446 outside the child's home. See In re D.F., 147 Wis. 2d at 496-97, 433 N.W.2d at 612-13.
The majority concludes that if the parent is notified when the child is first removed from the home that abandonment is a ground for termination, sec. 48.365, Stats., does not require further notice when an extension order is entered. The majority relies on sec. 48.415, Stats., which provides in part:
Grounds for termination of parental rights shall be one of the following:
(1) Abandonment. (a) Abandonment may be established by a showing that:
. . . .
2. The child has been placed, or continued in a placement, outside the parent's home by a court order containing the notice required by s. 48.356(2) and the parent has failed to visit or communicate with the child for a period of 6 months or longer . . . . [Emphasis added.]
I have added the emphasis to call attention to that part of the statute which the majority writes out. Plainly, "a court order containing the notice required by s. 48.356(2)" modifies both "has been placed," and "continued in a placement," outside the parent's home.
The majority's error stems from its misunderstanding of the CHIPS procedure. The majority apparently concludes that all extensions of dispositional orders are part of the original disposition and are not separate proceedings. This is not the case. A new dispositional order issued under sec. 48.355, Stats., is required whenever the child's disposition is extended. Section 48.365(2m)(a), Stats. Section 48.356(1), Stats., makes clear that the trial court's duty to inform the parent applies not only to the original dispositional order but to each extension. The statute applies to orders under sec. 48.345, Stats., or *447 48.365. Section 48.345 authorizes the initial order while sec. 48.365 authorizes an extension.
The majority's construction of sec. 48.356, Stats., leads to an unreasonable result. Whenever the trial court enters an extension order under sec. 48.365, the judge will be required to inform the parent or parents of the CHIPS grounds for termination of the parent's parental rights but not the abandonment grounds. This odd result cannot have been intended or anticipated by the legislature when it enacted sec. 48.356. I dissent.
NOTES
[] Petition to review denied.
[1] Originally assigned to a single judge, this case was converted to a three-judge panel by order of the chief judge. Section 809.41, Stats.
[2] Section 48.356, Stats., provides in part:

(1) Whenever the judge orders a child to be placed outside his or her home because the child has been adjudged to be in need of protection or services under s. 48.345, 48.357, 48.363 or 48.365, the judge shall orally inform the parent or parents who appear in court of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child to be returned to the home . . . .
(2) In addition to the notice required under sub. (1), any written order which places a child outside the home under sub. (1) shall notify the parent or parents of the information specified under sub. (1).
[3] Section 48.415(1), Stats., provides in part:

Grounds for termination of parental rights shall be one of the following:
(a) Abandonment may be established by a showing that: . . ..
2. The child has been placed, or continued in a placement outside the parent's home by a court order containing the notice required by s. 48.356(2) and the parent has failed to visit or communicate with the child for a period of 6 months or longer
. . ..
[4] D.K.'s parental rights were subsequently terminated by a separate order.
[5] Section 48.415(2), Stats., provides in part:

Continuing need of protection or services may be established by a showing of all of the following:
(a) That the child has been adjudged to be in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under s. 48.345, 48.357, 48.363 or 48.365 containing the notice required by s. 48.356(2).
[6] The procedure following the jury's verdict was more complicated than we have noted, but is not relevant to our decision.
[7] In D.F., two of the dispositional orders were entered prior to the effective date of a 1984 amendment to sec. 48.356, Stats., and were thus analyzed by the court under the unamended version. See id. at 490, 433 N.W.2d at 612-13.
[8] This interpretation is supported by our language in D.F., where we noted that "[t]he importance of the notice required by sec. 48.356(2) is reflected in the fact that the legislature has required that the dispositional orders which establish the CHIPS grounds for termination include the notice." Id. at 495, 433 N.W.2d at 612 (emphasis added).
[9] The county also asserts: (1) that C.D.K. should be denied use of a motion for reconsideration because the motion delays the case, and thus is not in the best interests of the children; (2) that C.D.K. should not have been permitted to raise a new issue on a motion for reconsideration; (3) that we should overrule D.F.; (4) that we hold that D.F. should be applied prospectively; or (5) that K.K. and T.K. have a constitutional right to have C.D.K.'s parental rights terminated. As a result of the disposition of this case, we need not reach these issues.
[10] Section 48.23(2)(a), Stats., provides in part:

If a proceeding involves a contested adoption or the involuntary termination of parental rights, any parent 18 years old or older who appears before the court shall be represented by counsel; but the parent may waive counsel provided the court is satisfied such waiver is knowingly and voluntarily made.
[11] In In re S.S.K., 143 Wis. 2d 603, 611-12, 422 N.W.2d 450, 452-54 (Ct. App. 1988), we concluded that here was no constitutional right to effective assistance of counsel in a proceeding to terminate parental rights. However, S.S.K. did not consider the argument advanced by C.D.K.