Marietta Pochop TODD, Petitioner
and Appellant,

v.

Roger A POCHOP, Respondent
and Appellee.

No. 14578.

Supreme Court of South Dakota.

Considered on Briefs Jan. 8, 1985.

Decided March 20, 1985.

Gary F. Colwill of Schmidt, Schroyer, Colwill & Zinter, P.C., Sp. Asst. Atty. Gen., Pierre, for petitioner and appellant.

Joseph E. Ellingson of Tobin Law Offices, P.C., Winner, for respondent and appellee.

FOSHEIM, Chief Justice.

This is our first encounter with the issue raised by this appeal. It is whether a custodial parent's failure or refusal to provide a noncustodial parent with visitation rights may be raised as an equitable defense in a Uniform Reciprocal Enforcement of Support Act (URESA) action. SDCL ch. 25–9A. The trial court held that it was. We reverse.

In view of our holding, we do not deem a full recitation of the facts particularly relevant or necessary. Suffice it to say that the custodial parent engaged in grievous and at times contemptuous interference with appellee's visitation rights.

The majority of states hold that interference with a noncustodial parent's visitation rights may not be raised as a defense in a URESA action. *See, e.g., Ibach v. Ibach*, 123 Ariz. 507, 600 P.2d 1370 (1979); *Kline v. Kline*, 260 Ark. 550, 542 S.W.2d 499 (1976); *County of Clearwater, Minnesota v. Petrash*, 198 Colo. 231, 598 P.2d 138 (1979); *Washburn v. Washburn*, 414 So.2d 1192 (Fla.App.1982); *Vecellio v. Vecellio*, 313 So.2d 61 (Fla.App.1975); *People ex rel. Argo v. Henderson*, 97 Ill.App.3d 425, 52 Ill.Dec. 796, 422 N.E.2d 1005 (1981); *Beneventi v. Beneventi*, 185 N.W.2d 219 (Iowa 1971); *England v. England*, 337 N.W.2d 681 (Minn.1983); *Pifer v. Pifer*, 31 N.C. App. 486, 229 S.E.2d 700 (1976); *Kramer v. Kelly*, 265 Pa.Super. 58, 401 A.2d 799 (1979); *Hoover v. Hoover*, 271 S.C. 177, 246 S.E.2d 179 (1978); *State ex rel. Hubbard v. Hubbard*, 10 Wis.2d 683, 329 N.W.2d 202 (1983). The policy supporting this rule is perhaps best stated in *State ex rel. Hub-*

*bard v. Hubbard, supra* 329 N.W.2d at 205:

> The very purpose of the URESA requires that it be procedurally and substantively streamlined. Interstate enforcement of support obligations will be impaired if matters of custody, visitation, or a custodial parent's contempt are considered by the responding court. The introduction of such collateral issues will burden the URESA mechanism. Moreover, permitting the resolution of other family matters in a URESA proceeding may deter persons from invoking the URESA.

■ In *State of Wisconsin ex rel. Southwell v. Chamberland,* 349 N.W.2d 309, 311 (Minn.App.1984), the court stated that "it is an accepted principal that the misconduct of the mother does not affect the father's duty to support his child. Indeed, this duty is well nigh absolute, and a support order must ordinarily be complied with even if the actions of the wife place her in contempt of court." Moreover, in enacting URESA, the legislature could not have intended that the state's prosecuting attorney be transformed into a private attorney representing the client in a divorce proceeding where visitation and custody issues are raised. *Beneventi v. Beneventi,* 185 N.W.2d 219 (Iowa 1979).

The majority rule is congruous with South Dakota authority holding that a father may not withhold child support payments as an "extrajudicial method of obtaining visitation privileges." *Otten v. Otten,* 245 N.W.2d 506, 508 (S.D.1976). It is also supported by our statute, SDCL 25–9A–24, which provides, "The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court." Appellee's argument regarding the statutory definition of "obligee" is without merit.

The majority of courts also recognize that the responding court may change the amount of support payments based upon the needs of the child and ability of the noncustodial parent to pay. *See* 31 A.L. R.4th 347, 352 (1984). The authority for

this practice stems from § 31 and § 3 of the URESA, which are comparable to SDCL 25–9A–32 and SDCL 25–9A–2.

We recognize that a few states allow collateral issues of custody and visitation to be raised in a URESA action. *See e.g., Hethcox v. Hethcox,* 146 Ga.App. 430, 246 S.E.2d 444 (1978); *McLauchlin v. McLauchlin,* 372 Mich. 275, 125 N.W.2d 867 (1964); *State of New Jersey v. Morales,* 35 Ohio App.2d 56, 299 N.E.2d 920 (1973); *Daly v. Daly,* 39 N.J.Super. 117, 120 A.2d 510 (1956), *affd.* 21 N.J. 599, 123 A.2d 3 (1956); *but compare, Brown v. Turnbloom,* 89 Mich.App. 162, 280 N.W.2d 473 (1979); *McCoy v. McCoy,* 53 Ohio App.2d 331, 374 N.E.2d 164 (1977). We also note that Michigan has expressly allowed these issues to be raised where, as in the case before us, the responding state is also the state of divorce. *See, Watkins v. Springsteen,* 102 Mich.App. 451, 301 N.W.2d 892 (1981).

We have considered both the majority and minority views and conclude that sound policy reasons support the majority rule. Carried to an extreme, allowing the visitation defense would mean that if the custodial parent's visitation violations were constant and flagrant enough, the child would be allowed to starve while the parents continued their battles. This we cannot countenance.

■ A defendant in a URESA action must raise visitation and custody matters in a separate proceeding in the state of divorce. The judgment below is reversed and remanded for further proceedings consistent with this opinion.

WOLLMAN and MORGAN, JJ., and WUEST, Circuit Judge, Acting as a Supreme Court Justice, concur.

HENDERSON, J., specially concurs.

HENDERSON, Justice (specially concurring).

True, the majority of courts do not recognize frustration of custody and visitation rights as a defense to a URESA action.

However, the majority of courts also recognize that the responding court can change the duty of support, i.e., the amount of child support payments, based on the present facts before it. This authority is said to come from the provisions contained in SDCL 25–9A–32 and SDCL 25–9A–2, which are comparable to §§ 31 and 3 of URESA, respectively. An excellent annotation on this very point is contained in 31 A.L.R.4th 347 (1984); on page 352 thereof, it is stated:

> In construing § 31 of the Act, several courts have taken the view that a court acting as a responding court in a URESA proceeding is not prevented from entering a child support order different from that previously ordered, on the basis that such an award is effective prospectively only, and thus the court is not nullifying or superseding the prior order within the meaning of the provision.... In such cases, the courts have reasoned that proceedings under the Act are de novo, in that the responding court has the authority to make an independent determination regarding the duty of support based on presently existing conditions, that the remedies under the Act are in addition to and not in substitution for any other remedies, and that the Act contemplates that more than one order of support may be outstanding at any given time for the same obligation. (Footnotes omitted.)

Hypothetically, I am not suggesting that our sister State of Minnesota can change the terms of a support decree issued by a court in the State of New York. A trial judge, acting under URESA, has a right to breathe practicality and equity into the situation which confronts him in the courtroom. A URESA hearing judge should be permitted to keep an open mind in the hearing; otherwise, there is no ring of reality to the economic facts brought before him. He has the right and duty to carefully listen to and deliberate upon evidence submitted to him. Then, his obligation is to set a just amount of support considering the needs of the children and the absent parent's ability to pay. *See Olson v. Olson,* 534 S.W.2d 526 (Mo.App.1976).