Gloria STACH, Plaintiff and Appellee,

v.

Robert STACH, Defendant and Appellant.

No. 14468

Supreme Court of South Dakota.

Considered on Briefs Sept. 13, 1984.

Decided June 5, 1985.

Lee M. McCahren, Vermillion, for plaintiff and appellee.

Frank M. Eichler, II of Stuart & Gerry, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

This appeal is from an order issued by the trial court in the last of a series of contempt proceedings initiated by the parties against each other. Appellant, Robert Stach (Robert), filed an Affidavit and Application for Show Cause Order (application for show cause order) to compel appellee, Gloria Barnes (Gloria), his ex-wife, to allow him to exercise his visitation rights and to pay him his share of the equity in the family home in accord with the stipulations incorporated in a modified divorce decree. Gloria filed an application for show cause order to compel Robert to make child support payments. A show cause hearing was held and the trial court made findings of fact and conclusions of law and issued an order. Robert appeals from that order. We affirm in part, reverse in part and remand.

Gloria and Robert were divorced in October of 1980. A Stipulation and Agreement was incorporated into the divorce decree under which Gloria received custody of the three children subject to Robert's visitation rights.[1] Robert agreed to pay child support of $350.00 per month and Gloria agreed to pay $15,000.00 for Robert's equi-

ty in their house in five equal annual installments beginning January 1, 1981. Under paragraph 7(b) of the agreement incorporated in the original decree, any unpaid balance of the $15,000.00 equity was accelerated and became due three months after Gloria commenced cohabitation in the residence with any adult. The agreement provided for ten percent interest on any delinquent payments.

Within six months of the divorce decree, Robert initiated the first contempt proceeding. He filed an application for show cause order on April 2, 1981, in an effort to compel payment of the first $3,000.00 installment on the $15,000.00 equity payment and to request acceleration of the balance pursuant to paragraph 7(b) of the stipulation and agreement. Gloria was asked to show why she should not be required to pay the $15,000.00 plus ten percent interest from December 1980, the month Robert Barnes, her present husband, moved into the house.

As a result of the initial contempt action, the parties stipulated and agreed to modify the original decree. Gloria acknowledged that she had cohabited with an unrelated adult since December 1, 1980, and that, as a consequence, under the original decree she owed Robert $15,000.00, plus ten percent interest from March 1, 1981. Robert stipulated that he would not pursue action for payment until March 1, 1982. A court order modifying the original decree, in accordance with the stipulation, was entered on May 21, 1981.

Robert filed a second application for show cause order on August 6, 1982, in an attempt to enforce his visitation rights and to collect the equity payment and interest, none of which had been paid. Although the order was issued, apparently nothing was resolved in that proceeding. On May 20, 1983, Robert filed a third application for show cause order. He again alleged that Gloria had denied him his visitation rights

---

1. Under the original decree, visitation was to include but was not limited to: (1) two weekends per month, (2) ten consecutive weeks dur-ing summer, and (3) ten consecutive days at Christmas to include Christmas Day on alternate years.

and had failed to pay him any portion of the equity payment.

In response, Gloria signed an application for show cause order which alleged that Robert had made no child support payments from November of 1982 to June of 1983 and that he was $2,250.00 in arrears. Gloria admitted that she owed the $15,000.00 but denied that she owed interest, based on her contention that she had offered to pay Robert the $15,000.00 over "an extended period of time" and that his implied refusal to accept payment precluded any interest on the amount due. Gloria argued that Robert did not have "clean hands" as a result of his failure to pay child support and, on that basis, she requested the trial court to dismiss Robert's application for show cause order. Gloria also requested increased child support payments, a lien for child support on the $15,000.00 equity payment in the event she turned it over, and a modification of the visitation provisions.

Based on the evidence and testimony presented at the show cause hearing, the exhibits of record, a psychological report on the two children, and Robert's brief, the trial court issued findings of fact, conclusions of law and an order. Gloria was ordered to comply with the trial court's prior decree regarding visitation, and to pay Robert $15,000.00 for his equity in the marital home, plus ten percent interest from May 20, 1983, the date Robert filed his application for show cause order. Gloria was allowed to deduct the child support Robert withheld from the $15,000.00 equity payment. Gloria's request for modification of child visitation privileges, her request for an increase in child support, and her request to impress any balance due on the equity payment as security for child support payments were all denied. Each party's request for a contempt citation against the other for failure to abide by the trial court's previous decrees was denied. Each

party was ordered to bear their own attorney fees and costs of the action.

Robert raises four issues on this appeal, and we shall discuss them in the following order: (1) Whether he is entitled to interest on the $15,000.00 equity payment from March 1, 1981, the date agreed to by the parties, or from May 20, 1983, the date selected by the trial court, (2) whether the court erred in deducting the past due child support payments from the $15,000.00 equity payment that Gloria owed Robert, (3) whether the trial court should have cited Gloria for contempt in light of her arbitrary denial of visitation and failure to pay the $15,000.00, and (4) whether he is entitled to attorney fees because the court found that Gloria arbitrarily denied him visitation and failed to pay the $15,000.00 owed him.

We first consider whether the trial court erred in ordering interest on the equity payment at ten percent per annum from May 20, 1983, rather than from March 1, 1981. The trial court's findings noted that "on May 14, 1981, the parties entered into an agreement to modify the decree whereby plaintiff agreed she owes defendant $15,000.00 plus interest at ten percent *from March 1, 1981.*" (Emphasis added.) Modification of the original decree in this respect was carried into effect by an order of the court issued on the same date. In its conclusions of law, however, the trial court concluded that "plaintiff shall pay the entire balance of the $15,000.00 together with ten percent interest from the date of the filing of defendant's order to show cause *of May 20, 1983* [.]" (Emphasis added.)

We find nothing in the record to support changing the date from which the interest must be paid. In appellee's brief, counsel surmises that it was to offset interest on the arrearages of child support due from Robert to Gloria.[2] There is certainly nothing in the record to support this assumption.

**2.** (1) Gloria failed to request interest on the arrearages in her application; and (2) assuming even a fifteen percent rate of interest on the arrearages, it would not amount to enough to equitably offset over two years' interest on $15,000.00 at ten percent.

Counsel further suggests that the trial court's action was proper under our holding in *Fait v. Fait,* 345 N.W.2d 872 (S.D. 1984). Relying upon *Fait,* he suggests that trial courts may exercise broad discretion in dividing marital property *and in enforcing the division.* He contends that a trial court's disposition of marital property will not be set aside absent a clear abuse of discretion. This statement is totally inappropriate for two reasons: (1) *Fait, supra,* dealt with the trial court's discretion in making an original property division; and (2) the *Fait* decision does not even mention enforcement of the decree. We therefore reject counsels' arguments out-of-hand.

The interest due on the $15,000.00 equity payment is part of Robert's property right under the divorce decree, as it was amended by agreement of the parties and the court order. It represents the temporarily suspended accrual of his equity investment in the marital property. The trial court wiped out Robert's right to collect ten percent interest on $15,000.00 for a two-year and two-month period, thus reducing the growth on Robert's investment by $3,250.00.

> The property settlement in a divorce action is designed to settle with finality the property rights of parties as of time of entry of judgment; each party is entitled to their respective property as of that date.

*Rousseau v. Gesinger,* 330 N.W.2d 522, 525 (S.D.1983) (citation omitted).

We therefore hold that the trial court erred and we remand for amendment of the order directing payment of interest on $15,000.00 at ten percent from March 1, 1981.

We next consider Robert's contention that the trial court erred in holding him responsible for child support payments that he withheld during the period in which Gloria denied him visitation rights and in deducting child support arrearages from the balance due on the equity payment. The trial court specifically found:

> The Defendant was denied visitation privileges authorized under the decree of the Court and the agreement of the parties for a period of approximately 18 months.
>
> The visitations with the minor children were arbitrarily denied Defendant, by the Plaintiff, without proper cause or reason.
>
> ....
>
> As a result of Plaintiff's arbitrary denial of visitations Defendant did discontinue child support from approximately November, 1982 to the present.

and it concluded as a matter of law that

> Defendant was denied visitation privileges authorized under the decree of the Court and the agreement of the parties for extended periods of time and said visits were arbitrarily denied to Defendant by the Plaintiff without proper cause or reason.
>
> ....
>
> Defendant's obligation to make child support payments is independent of his right to visit the children.

As this court stated in *Otten v. Otten,* 245 N.W.2d 506, 508 (S.D.1976): "[The non-custodial parent] was not justified in withholding child support payments as an extrajudicial method of obtaining visitation privileges." In *Otten,* there was no provision in the decree for visitation and the defendant-father was attempting to force visitation rights. In a very recent case, *Todd v. Pochop,* 365 N.W.2d 559 (S.D. 1985), we adopted the wording of a Minnesota Appellate Court decision:

> "[I]t is an accepted principal that the misconduct of the mother does not affect the father's duty to support his child. Indeed, this duty is well nigh absolute, and a support order must ordinarily be complied with even if the actions of the wife place her in contempt of court."

*Todd,* 365 N.W.2d at 560, *citing State of Wis. ex rel. Southwell v. Chamberland,* 349 N.W.2d 309 (Minn.App.1984).

While *Todd* was a Uniform Reciprocal Enforcement of Support Act (URESA) action, SDCL 25–9A, the ruling that support obligations are independent from

visitation rights goes beyond URESA cases. This is not to say that a noncustodial parent cannot apply to the original trial court for relief under such circumstances. The children's best interest requires that they be supported. Children may not be denied support or in any way punished for the sins of the custodial parent. This court does not approve of personal modifications to divorce decrees absent court amendment or a binding agreement; only a trial court may retroactively modify child support payments based on the payor's financial situation and the children's welfare. *Barrett v. Barrett*, 308 N.W.2d 884 (S.D.1981).

We have thus far dealt with that part of the issue regarding Robert's continuing responsibility for child support in spite of Gloria's actions. The other aspect of the issue is, whether once arrearages have accrued may a trial court excuse any or all of such arrearages?

In *State ex rel. Larsgaard v. Larsgaard*, 298 N.W.2d 381, 384 (S.D.1980) (where delinquent father demonstrated intervening physical problems and resultant diminished earning capacity), this court held that:

> [T]he trial court had the power to retroactively modify appellee's child support payments.... A trial court must adjudicate upon the realities of the domestic situation at hand and not be totally inflexible with regard to its earlier support judgment....
>
> ....
>
> ... The trial court was sitting in equity and it acted in equity. We hold that the trial court did not err in retroactively modifying its judgment of child support.

This rule has since been followed in *Hood v. Hood*, 335 N.W.2d 349 (S.D.1983) (child support determined by multiplying a party's earnings by a percentage does not consider relevant changes and may be retroactively modified); *Singer v. Singer*, 317 N.W.2d 826 (S.D.1982) (destruction of father's source of income by windstorm and expenditures for care of his ailing mother warranted trial court's determination of changed financial circumstances); *Barrett, supra* (trial court may retroac-

tively modify support based on payor's financial situation and the children's welfare, in this case diminished earning capacity and change in custody); *Jameson v. Jameson*, 306 N.W.2d 240 (S.D.1981) (father unable to comply with a harsh agreement). As pointed out, however, by Justice Wollman in his dissent in *Hood, supra*, "such modification is proper only after the trial court in the exercise of its discretion determines that changed conditions warrant such modification." 335 N.W.2d at 353, *citing Jameson, supra.*

In this case, Robert relies solely upon Gloria's actions as a grounds for modification. He did not allege below, nor does he urge on appeal, any change in circumstances that would give the trial court grounds for retroactive modification of the original decree. We affirm the trial court's decision in this respect.

■ In the third issue, Robert urges that the trial court erred when it refused to hold Gloria in contempt for denying his visitation rights and for withholding payment of the equity money. While there is no question but what the trial court could have held Gloria in contempt for denying visitation, and for failure to comply with the order for payment of the property division, *Johansen v. Johansen*, 365 N.W.2d 859 (S.D.1985), it found as a fact that neither party has come into this court with clean hands respecting the request for a citation of contempt. In this regard, it took cognizance that Robert was also guilty of conduct punishable by contempt, i.e., withholding child support for one year. The trial court concluded as a matter of law that "neither party has entered the Court with clean hands and the request for citation of contempt against each of the parties will be denied." We thoroughly agree.

■ The same reasoning applies to Robert's final issue, wherein he claims that inasmuch as the trial court found that Gloria arbitrarily denied visitation and failed to pay the equity payments, the trial court erred in not ordering her to pay his attorney fees. The allowance of attorney fees

and costs in a divorce proceedings rests in the discretion of the trial court. SDCL 15–17–7; *Rykhus v. Rykhus*, 319 N.W.2d 167 (S.D.1982).

In light of the trial court's findings noted on the second issue above, we find no abuse of discretion on the part of the trial court on this issue.

We, therefore, affirm the trial court's order with respect to Robert's liability for child support arrearages, the refusal to issue contempt citations and the denial of attorney fees. We reverse and remand with instructions to amend the order to provide for interest on the equity payment at the rate of ten percent per annum from March 1, 1981.

FOSHEIM, C.J., WOLLMAN and HENDERSON, JJ., and ANDERSON, Circuit Judge, concur.

ANDERSON, Circuit Judge, sitting for WUEST, Acting J., disqualified.