Robert **REGYNSKI**, Appellee,

v.

**STATE OF ARIZONA, ex rel. Donna REGYNSKI,** Appellant.

No. 15499.

Supreme Court of South Dakota.

Considered on Briefs April 24, 1987.

Decided Oct. 28, 1987.

Jeffrey D. Larson, Woonsocket, for appellee.

Roger Tellinghuisen, Atty. Gen., and Janice Godtland, Asst. Atty. Gen., Pierre, for appellant.

MILLER, Justice.

The State of Arizona appeals from an order forgiving all child support arrearages owed by Robert G. Regynski (husband). We reverse.

Husband and Donna Regynski (wife) were divorced on January 3, 1979. The court incorporated the parties' "Separation, Custody and Property Agreement" in the divorce decree. The parties agreed that wife would have custody of nine-year-old Richard (son), subject to husband's visitation privileges. Husband, who had previously adopted wife's son, agreed to pay $50 per month child support for one year and $75 per month thereafter.

Husband was not able to exercise his visitation privileges because wife and son constantly moved without leaving a for-warding address. On the advice of counsel, husband reduced his child support payment by $25 per month "until we get the visitation straightened out." In June 1981, the parties again stipulated to $75 per month child support and specific periods of visitation for husband. That August, husband was back in court. The court ordered wife to allow husband to exercise his visitation rights. Visitation never materialized, however, because wife moved.

In the fall of 1981 the Department of Social Services notified husband that he owed $250 in child support arrearages. He paid the arrearage in full. Husband testified that he also received a telephone call from a secretary in Social Services in November 1981, requesting wife's address. Because he did not know where wife was and Social Services also did not know, husband testified that the secretary told him to discontinue current child support payments since there was no place to forward them to. Husband discontinued paying the current support. By affidavit, however, an official from the Office of Child Support Enforcement stated that the Office did not advise husband to discontinue current support payments; it only advised husband that the Office would not be involved in the collection of current child support.

In July 1984, wife applied for Aid to Dependent Children (ADC) in Arizona. In her application she indicated that husband was an "absent" parent and assigned her child support rights to Arizona. In October 1985, husband received a notice from the Internal Revenue Service of a tax intercept filed against him for $3,095 by the State of Arizona. Husband immediately went to court seeking custody of son and forgiveness of child support arrearages.[1] There was no dispute that husband had not, and Arizona had, made child support payments.

The trial court found that husband had paid no child support upon the telephone advice of Social Services. It found that wife applied for ADC in Arizona alleging that husband was missing when she, in fact, knew where he lived. It further found that wife "from the beginning, ig-

1. Husband's appellate attorney began represent-ing him at this point in the proceedings.

nored or deliberately disobeyed every [visitation] order of this Court." The court concluded that these findings "constitute a significant change of circumstances" and set aside the arrearage.

The issue on appeal is whether the trial court abused its discretion by retroactively modifying its judgment of child support.

The trial court has the authority to modify child support payments originally based upon a stipulation between the parties if the trial court in its discretion determines that "changed conditions" warrant such a modification. *Jameson v. Jameson,* 306 N.W.2d 240 (S.D.1981). The discretion allotted to the trial court under SDCL 25–4–41 and SDCL 25–4–45 also gives the trial court, sitting and acting in equity, the power to retroactively modify child support arrearages due the state through assignment. *Larsgaard v. Larsgaard,* 298 N.W.2d 381 (S.D.1980).

The state of Arizona argues that wife's failure to allow visitation and the telephone call directing husband to cease current child support payments do not constitute a sufficient change of circumstances to warrant forgiveness of arrearages. We agree.

In *Stach v. Stach,* 369 N.W.2d 132 (S.D.1985), we summarized recent case law on the topic:

> In a very recent case, *Todd v. Pochop,* 365 N.W.2d 559 (S.D.1985), we adopted the wording of a Minnesota Appellate Court decision:
>
>> "[I]t is an accepted principal that the misconduct of the mother does not affect the father's duty to support his child. Indeed, this duty is well nigh absolute, and a support order must ordinarily be complied with even if the actions of the wife place her in contempt of court."
>
> *Todd,* 365 N.W.2d at 560, *citing State of Wis. ex rel. Southwell v. Chamberland,* 349 N.W.2d 309 (Minn.App.1984).

While *Todd* was a Uniform Reciprocal Enforcement of Support Act (URESA) action, SDCL 25–9A, the ruling that support obligations are independent from visitation rights goes beyond URESA cases. This is not to say that a noncustodial parent cannot apply to the original trial court for relief under such circumstances. *The children's best interest requires that they be supported. Children may not be denied support or in any way punished for the sins of the custodial parent. This court does not approve of personal modifications to divorce decrees absent court amendment or a binding agreement; only a trial court may retroactively modify child support payments based on the payor's financial situation and the children's welfare. Barrett v. Barrett,* 308 N.W.2d 884 (S.D.1981). (Emphasis supplied).

While wife's conduct in withholding contact with son for over seven years is abhorrent, husband's remedy lies elsewhere. Where child support is concerned, the *child's interest* is the primary consideration, not an undefined notion of the "equitable" adjustment of rights between the parents. *Hanson v. Hanson,* 397 N.W.2d 656 (S.D.1986). In this case, there was absolutely no indication that husband's financial situation had deteriorated or that son's need for support lessened. Consequently, the trial court did not have a foundation for forgiving the arrearages, and abused its discretion by doing so.

Because the amount of the tax intercept may be in excess of the amount of the child support arrearage, we reverse and remand to the trial court with instructions to determine the amount of delinquent child support for which husband is liable.

WUEST, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

Obviously, on advice of his own counsel, father should not have reduced his child support $25.00 per month. This is a decision for the judge to make—not a lawyer.

Ex-wife here refused *all* visitation; father could not see his son. And he did not

know where the ex-wife and his son were living. She lived a nomadic existence. How could he be expected to send support? Where would he send it? Ex-wife made his obligation to support an impossibility. At one time, the Office of Child Support Enforcement advised him that *it would not be an agent for collection.* [1] Father was sacrificed on an altar of uncertainty, belligerence by his ex-wife, her nomadic lifestyle, and non-cooperation of state officials.

This author wrote *Larsgaard,* cited in the majority opinion, in 1980. Forgiveness of child support in *Larsgaard* was based upon the deteriorated economic condition of the father. We there approved of retroactive modification of child support payments.[2] *Larsgaard* also applies to support rights assigned to the state. However, arrearages can only be modified upon a substantial and material change of circumstances. *Larsgaard,* 298 N.W.2d 381.

Here, father made a tactical error. When he was totally frustrated in visitation, he should have gone to the courts for help. *See Barrett v. Barrett,* 308 N.W.2d 884 (S.D.1981) (for explicit holding on this aspect). He did not. He withheld support.[3] In South Dakota, we have highly disapproved of this type of action. We announced in *Otten v. Otten,* 245 N.W.2d 506 (S.D.1976), that a father may not withhold child support payments as an "extrajudicial method of obtaining visitation privileges." *Otten,* 245 N.W.2d at 508.

Father, through his lawyer, should have petitioned the court which adjudicated on the child support matter at the inceptual jurisdiction. We applied the *Otten* holding in *Todd v. Pochop,* 365 N.W.2d 559 (S.D. 1985), cited in the majority opinion, a URESA action. This author concurred specially in *Pochop,* acting out of caution, and to point out that there are instances (so held

by the majority courts of the land) where a responding court can change the obligations of support. This statement is supported by SDCL §§ 25–9A–32, 25–9A–2, and 31 A.L.R.4th 347, 352 (1984). I am suggesting that modifications of child support, which could conceivably include retroactive relief, are favored by many jurisdictions, when the facts so warrant. This includes domestic cases where state government becomes involved via ADC, etc. Our courts cannot/should not say: father (or mother), you did not pay and you absolutely must pay, whatever the given circumstances of the case—rationalizing that a court order is a court order—and it shall remain like the Rock of Gibraltar—steadfast—impenetrable. Such thought is abominable to reason; i.e., let us not harness ourselves in precedent so tightly that we are rigidly fixed to only one conclusion.

In reviewing this record, there is a total void on economic change of circumstances; five findings of fact and two conclusions of law, entered by the same trial judge who inceptually had jurisdiction, seek to, and do, implement retroactive modification (expunging back child support) on a basis of total frustration with the ex-wife's refusal to abide by visitation orders, i.e., contempt. Tangential to my core thought, I mention that contempt findings were not entered nor was contempt alleged and tried.

On the scales of justice, one ponders on the relative merits of legal positions created by the facts herein: A mother who willfully will not permit a father to see his son, or a frustrated father who finally gives up on trying to find his son and quits paying child support? [4] Without any question in my mind, the patience of this trial judge was exhausted; he was righteously indignant over her contemptuous disregard of his court orders. The holding in *Pochop*

1. This statement could easily have led father to believe that child support payments were no longer being sought from him.

2. *Larsgaard's* announcement was later followed by this Court in *Hood v. Hood,* 335 N.W.2d 349 (S.D.1983).

3. Prior to the phone call in question with the Department of Social Services, father diligently

made his child support payments and paid off entirely the amount due the State of South Dakota.

4. Perhaps her day will come to answer at the Bar as to why this father cannot see, visit, be with his son, via contempt proceedings. Her actions appear to be inhumane. Father's actions are spawned from this inhumanity.

was not too extreme for the circumstances of that case, but the language therein contained is far too broad. Under the minority rule, the trial judge in this case could be sustained, but we have long abandoned it. *See* dissertation of former Chief Justice Fosheim in *Pochop,* 365 N.W.2d at 560. Thus, I reluctantly join the majority holding, veering from any alignment with absolutism, yet believing that a mother who literally hides a son from the father has, in effect, committed an act against nature. *Factum contra naturam, contra deum est* (an act against nature is an act against God).

