Donald P. MACKINTOSH and Barbara
Mackintosh, Plaintiffs and Appellants,

v.

Guy A. CARTER, Sondra Carter and
Kristina Carter, Defendants
and Appellees.

No. 16401.

Supreme Court of South Dakota.

Jan. 31, 1990.

Rehearing Denied March 8, 1990.

John L. Wilds and Starla R. Larson, and
William Fuller of Woods, Fuller, Shultz &
Smith, Sioux Falls, for plaintiffs and appel-
lants.

James L. Hoy of Hoy & Hoy, Sioux Falls,
for defendants and appellees.

## ACTION

TICE, Circuit Judge.

Donald and Barbara Mackintosh (Mrs.
Mackintosh) appeal from a summary judg-
ment entered in favor of Guy Carter (Dr.
Carter), Sondra Carter (Mrs. Carter), and
Kristina Carter (Kristina). We affirm.

## FACTS

Mrs. Mackintosh, mother of Blake Mack-
intosh (Blake), brought suit against the
Carters in August 1987, alleging three
causes of action:

(1) Enticement or alienation of affections
of a child,

(2) Libel and slander, and

(3) Intentional infliction of emotional dis-
tress.

Donald was joined as a party plaintiff pur-
suant to SDCL 15–6–19(a) in November
1987.

The allegations arise out of facts which
took place from late December 1986
through March 1987. During the 1986

Christmas holidays Blake, a high school senior, spent a considerable amount of time at the Carter residence visiting his girlfriend, Kristina, who was home from college in Indiana for the holidays. After missing several family meals and staying out on New Year's Eve, Blake's parents grounded him until after Kristina had returned to college on January 4, 1987. Both the Carter and Mackintosh residences were located in Sioux Falls.

During the next several weeks, Blake told the Carters about his unhappiness at home, his fear of his father and his contemplation of suicide. Blake's parents had responded to his threats of suicide by grounding him. Blake became very despondent. He described in detail to Mrs. Carter exactly how he would commit suicide. On February 5, 1987, Blake contacted personnel at Project Threshold, a home for runaway teenagers. He briefly explained his situation and requested information on how to get into their program. Mrs. Carter communicated with the Child Protection Division of the Department of Social Services (DSS) on February 10. On February 11 social worker Jodi Kludt visited with Blake at school. Blake told her that he was afraid of his father and had previously attempted suicide. The situation came to a head the evening of February 13. After a phone conversation with DSS at 10:00 p.m., Blake checked into Project Threshold at 3:00 a.m. on February 14. Blake requested that his parents not be notified. By letter dated February 14, 1987, Dr. Carter formally requested an evaluation of the Mackintosh home because of concerns of emotional abuse by Mr. Mackintosh. Mrs. Carter again contacted DSS expressing her concerns for Blake's well-being.

DSS subsequently contacted the state's attorney's office to review Blake's situation. In early March 1987, dependence and neglect proceedings were instituted by the deputy state's attorney who expressed a belief that Blake was a suicide risk, needed psychiatric or psychological care, and would not receive that care if he were to return home. A temporary guardian was appointed on March 4, 1987, and Blake remained in the custody of a foster parent until the proceedings were dismissed as moot in May 1987, when Blake turned 18 years old.

Mr. and Mrs. Mackintosh admit that problems of a "minor nature" existed concerning their relationship with Blake; however, they claim that the Carters interfered with their attempts to discipline Blake, wrongfully asserted influence over him, and enticed him from their home. Blake, however, stated that he left his home voluntarily and that love and affection did not exist in his home when he left. Blake also said that the Carters actively encouraged him to keep the lines of communication open with his parents.

The trial court granted the Carters' motion for summary judgment in July 1988.

## SUMMARY JUDGMENT

Summary judgment proceedings are not a substitute for trial and the remedy is authorized only when the movant is entitled to judgment as a matter of law because there are no issues of material fact. *Caneva v. Miners and Merchants Bank*, 335 N.W.2d 339 (S.D.1983). The moving party has the burden to clearly show that no genuine issues of material fact exist. The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party. *Klatt v. Continental Ins. Co.*, 409 N.W.2d 366 (S.D.1987). *See also Wilson v. Great Northern Railway Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968). The non-moving party opposing a motion for summary judgment must present specific facts which demonstrate the existence of genuine, material issues for trial; mere allegations are not sufficient to preclude summary judgment. *Laber v. Koch*, 383 N.W.2d 490 (S.D.1986). Finally, on appeal, affirmance of a summary judgment is proper if there exists any basis which would support the trial court's ruling. *Pickering v. Pickering*, 434 N.W.2d 758 (S.D.1989).

## LIBEL/SLANDER

■ Mr. and Mrs. Mackintosh's cause of action for libel and slander was properly

dismissed by summary judgment for two reasons. First, pursuant to SDCL 26–10–14, the Carters are immune from liability for making a good faith report of suspected child abuse. This immunity also extends to "any person who in good faith cooperates with a child protection team or the department of social services in any investigation, placement or treatment plan." *Id.* The record does not indicate any lack of good faith in the action by the Carters; in fact, the Carters' conduct demonstrates a good faith concern for Blake's situation. Thus, immunity attaches pursuant to SDCL 26–10–14.

■ Secondly, the Carters enjoyed a qualified privilege under SDCL 20–11–5(3) which provides, in part, that the communication is privileged when made "without malice, to a person interested therein, by one who is also interested, ... as to afford a reasonable ground for supposing the motive for the communication innocent...." The statute goes on to provide that in such situations malice cannot be inferred from the communication or publication itself; thus "a specific showing of malice is required for purposes of raising a genuine issue of material fact." *Uken v. Sloat,* 296 N.W.2d 540 (S.D.1980). Once the qualified privilege is established, a plaintiff "must establish that there was a reckless disregard for the truth on the part of the [defendant]," i.e., the defendants "in fact entertained serious doubts" regarding the truth of the communication. *Id.* (citations omitted). Clearly Mr. and Mrs. Mackintosh have not made the required "specific showing of malice". *See Blote v. First Federal Sav. and Loan Ass'n.,* 422 N.W.2d 834 (S.D.1988).

We hold that the Carters made the report in good faith and therefore are immune from liability for communications made to DSS. We also hold that the Carters' communications were between interested individuals and were made without malice and in good faith concern for Blake's well-being; therefore, the motion for summary judgment on liable and slander was properly granted.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ The tort of intentional infliction of emotional distress requires "conduct exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind." *Groseth Intern., Inc. v. Tenneco, Inc.,* 410 N.W.2d 159 (S.D.1987). The *Groseth* court listed the prima facia elements of the tort:

1. An act by defendant amounting to extreme and outrageous conduct;
2. Intent on the part of the defendant to cause the plaintiff severe emotional distress;
3. The defendant's conduct was the cause in fact of plaintiff's injuries; and
4. The plaintiff suffered an extreme disabling emotional response to defendant's conduct.

The Carters allowed their daughter's boyfriend, Blake, to visit their home; they also allowed him to stay for meals. As Dr. and Mrs. Carter became more acquainted with Blake, they also became keenly aware of Blake's unhappiness and his suicidal tendencies. They responded with support for him. They also reported their concerns to the proper authorities. Clearly this conduct is not extreme and outrageous—it does not exceed all bounds tolerated by a decent society. In fact, society encourages their conduct, as evidenced by the child abuse reporting statute discussed above. Further evidence of the reasonableness of the Carters' conduct is the fact that the authorities found it necessary to place Blake in a foster care for a period of time. Summary judgment on this issue was clearly warranted.

## ALIENATION OF AFFECTIONS OF A CHILD

■ Mr. and Mrs. Mackintosh's final cause of action was for enticement of a child from his parents, or alienation of affections of a child. SDCL 20–9–7(2). This court has never articulated its views concerning whether the tort of alienation of affections of a child is a valid cause of action. We have recognized the common

law tort of alienation of affection of a spouse. *See Hunt v. Hunt,* 309 N.W.2d 818 (S.D.1981); *Pankratz v. Miller,* 401 N.W.2d 543 (S.D.1987); and *Pickering, supra.* Unlike alienation of spousal affections, the alienation of affections of a child does not enjoy the same legal heritage. A majority of jurisdictions have refused to recognize the tort. *See Bartanus v. Lis,* 332 Pa.Super. 48, 480 A.2d 1178 (1984); *Hester v. Barnett,* 723 S.W.2d 544 (Mo. App.1987); *Morris v. Bruney,* 78 N.C.App. 668, 338 S.E.2d 561 (1986); *Raftery v. Scott,* 756 F.2d 335 (4th Cir.1985) (applying Virginia law); *Hyman v. Moldovan,* 166 Ga.App. 891, 305 S.E.2d 648 (1988); *Scholz v. Scholz,* 177 N.J.Super. 647, 427 A.2d 619 (1980); *Bock v. Lindquist,* 278 N.W.2d 326 (Minn.1979); *McGrady v. Rosenbaum,* 62 Misc.2d 182, 308 N.Y.S.2d 181 (1970); aff'd 37 A.D.2d 917, 324 N.Y.S.2d 876 (1971); *Ronan v. Briggs,* 351 Mass. 700, 220 N.E.2d 909 (1966); *see also, Orlando v. Alamo,* 646 F.2d 1288 (8th Cir.1981) (applying Arkansas law); *Schuppin v. Unification Church,* 435 F.Supp. 603, 608 (D.Ver.) aff'd 573 F.2d 1295 (2nd Cir.1977); *Whitehorse v. Critchfield,* 144 Ill.App. 3rd 192, 98 Ill.Dec. 621, 494 N.E.2d 743 (1986); *Hixon v. Buchberger,* 306 Md. 72, 507 A.2d 607 (1986). Such a refusal rests in part on the theory that to recognize the cause of action would make a child a pawn or a "hostage in family disputes." *Hester,* 723 S.W.2d at 555; *Bock,* 278 N.W.2d at 328.

Only one case appears to have recognized this tort, absent an actual abduction or kidnapping. In *Strode v. Gleason,* 9 Wash.App. 13, 510 P.2d 250, 254 (1973), a Washington appeals court found that a parent could maintain an action "against a third party who maliciously alienates the affections of a minor child." According to that court, a showing of an unjustifiable interference within the parent/child relationship would meet the maliciousness requirement.

We need not reach the issue of whether the tort of alienation of affection of a child is a valid cause of action in South Dakota, however. This case can very easily and readily be decided on the facts. Not only was there little affection which the Carters

could have alienated, but indeed their conduct reflected the highest qualities and virtues within our society. Far from jeopardizing relationships with the family, the Carters sought to encourage those relationships and at the same time, protect a child's emotional and physical well-being. Their conduct and motivation was exemplary. They were simply and clearly acting to protect the welfare of a child whom they viewed to be in jeopardy. To allow a civil suit to be pursued against individuals acting on behalf of children is a travesty of the law and an abuse of the justice system. On the facts alone, their case was properly dismissed by summary judgment because there is no evidence to support the belief that the Carters were acting in any fashion to alienate the affections of the child. The protection of children should be paramount in our society. Efforts to responsibly act on behalf of children should be applauded and encouraged, not made the subject matter of civil suits.

Having found that summary judgment on all causes of action was proper, the other issues raised on appeal need not be addressed. The decision of the trial court will be affirmed.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., dissents.

TICE, Circuit Judge, for SABERS, J., disqualified.

HENDERSON, Justice (dissenting).

In *American Indian Agr. Credit v. Fort Pierre,* 379 N.W.2d 318, 320 (S.D.1985) we expressed, *inter alia,* "... summary judgment is an *extreme remedy* and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue should be resolved against the movant".

In a summary judgment case, all the evidence and every reasonable inference arising therefrom must be viewed most favorably toward the nonmoving party. Here, the plaintiffs are to have all the evidence and every reasonable inference

arising therefrom viewed most favorably towards them. *Trapp v. Madera Pacific, Inc.,* 390 N.W.2d 558, 562 (S.D.1986).

To the absolute contrary, in this case, the moving party, the defendants, have had all of the evidence viewed most favorably towards them, the moving party.

One deposition and a host of conflicting affidavits all suggest that there are certainly factual issues to be tried by a jury. South Dakota Constitution, art. VI, § 6, begins with these words: "The right of trial by jury shall remain inviolate and shall extend to all cases at law without regard to the amount in controversy, ...". In *Grigsby v. Larson,* 24 S.D. 628, 124 N.W. 856 (1910) this Court held that said constitutional provision did preserve the right to a jury trial in those causes that were triable to a jury at common law.

There are affidavits and attached exhibits which reflect that the boy in question was enticed away from his home and his parents to live within the home of the Carters. SDCL 20–9–7 provides: "The rights of personal relation forbid: (2) The abduction or enticement ... of a child from a parent ...". There are showings, if viewed in a light most favorably toward the Mackintosh's, establishing that the parents of the young lad insisted that he be home by 11:00 p.m., whereas the Carters participated in activities which kept him out into the early morning hours; appellee Kristina Carter, wrote to her boyfriend, Blake, around whom this controversy swirls, that he, Blake, should come and live "with my folks". There is evidence establishing non-suicidal conduct and character of Blake. There is evidence to suggest that there was absolutely no emotional abuse of Blake. There is evidence to suggest that the Carters interfered with the parent/child relationship and alienated this young man from his parents. There is evidence, in this record, to suggest that the Carters inflicted, intentionally, emotional distress upon

the Mackintosh's, apparently out of a desire to condone the relationship of their daughter with Blake. Mackintosh's had a right to raise their son. A factual question arises as to whether Carters interfered with that right.

In Proverbs 19:18, it is written: "Chastise your son while there exists hope".

When the evidence is viewed in a light most favorable to the Plaintiffs, it appears Blake had a good and nourishing childhood. This entire episode was instantly created when Blake failed to come home for dinner on 3 successive nights. As Blake's involvement with the Carter's daughter intensified, his absence from home became more commonplace. Carters seemed to encourage the relationship and the absences of Blake from his home. Mackintoshes "grounded" Blake, their son, whereupon the record suggests the Carters encouraged Blake to break his curfew and to condone (at their home) his relationship with an adult college student.

Under SDCL 26–10–14, Carters are "immune" if they file a report if it is "in good faith." There is a legitimate, honest, and real factual issue as to the Carter's "good faith." Is it "good faith" to woo a child into delinquency? A factual question arises, under the totality of these facts, regarding the immunity of the Carters.*

Dr. Carter used his office to influence the Department of Social Services by using a letterhead of the South Dakota School of Medicine. In said letter, he accused the parents of Blake of inflicting a significant degree of emotional abuse for a period of several years. His wife, Sondra, delivered the highly damaging letter to said department. Surely, this raises a question of malice (for a jury to decide) under all of the circumstances.

In my opinion, the State here strikes most emphatically against the family. Civilizations rise and fall according to the na-

---

* There appears to be no doubt that the parents of this young man were brought into public discredit and were forced to appear in termination of parental right proceedings (which were dismissed) and that their good name and reputation was brought into question in the City of Sioux Falls. I perceive the Carters' position to be that the parents brought this upon themselves by raising this lad under false teachings. If they did or did not, should be decided by a jury under these facts.

ture of family life and foundational structures. The family is central to the organization and foundation of the Christian social order. In Ephesians 6:1–3 we find: Children obey your parents in the Lord for this right. Honor your father and mother.

Blake did not obey his parents. He did not honor his father and mother (at least there is a factual question). And Carters upheld him. Under *Ruple v. Brooks,* 352 N.W.2d 652, 654 (S.D.1984) a factual question exists for the jury to determine if there was extreme and outrageous conduct either intentionally, or recklessly, causing severe emotional distress.