**Patricia Eloise HERSHEY, Plaintiff and Appellant.**

v.

**Brooke Curtis HERSHEY, Defendant and Appellee.**

**Nos. 17077, 17110.**

Supreme Court of South Dakota.

Argued Oct. 23, 1990.

Decided March 13, 1991.

Reed C. Richards, Deadwood, for plaintiff and appellant.

Gary G. Colbath of Banks, Johnson, Johnson, Colbath & Huffman, P.C., Rapid City, for defendant and appellee.

SABERS, Justice.

Mother appeals limitation on her recovery of back child support to six years. Father cross-appeals dismissal of his counterclaim against Mother for tortious interference with father-son relationship.

### Facts

Patricia Hershey (Mother) and Brooke Hershey (Father) were divorced in South Dakota in 1968. The divorce decree awarded custody of their only child Paceon (Son) to Mother, and required Father to pay Mother $125 per month for Son's support and $25 per month into an education fund for Son's benefit.

From 1968 to 1971, Mother, Son and Mother's new husband lived first in Nebraska and then in Arizona. Father knew where they were living during this period, and there was protracted litigation over custody and visitation, culminating in the first *Hershey v. Hershey*, 85 S.D. 85, 177 N.W.2d 267 (1970). In 1971, in the midst of more litigation following the Supreme Court decision, Mother suddenly dismissed her attorney, who informed Father that Mother had taken Son and left Arizona. Father has not seen his Son since. Mother and Son eventually moved to Oregon, where Mother registered Son in school under the last name of a third husband whose name was unknown to Father.

From 1971 to 1985, Mother made no attempt to contact Father and Father had no knowledge of Son's whereabouts. Son graduated from high school in 1985.

During the period from the 1968 divorce to Son's attainment of majority in 1985, Father paid nothing to Mother in child support and established no education fund for Son's benefit. In 1988, Mother brought an order to show cause in South Dakota why Father should not be compelled to pay:

(1) $26,750 in back child support from 1968 to 1985;

(2) $5,100 in back education fund payments from 1968 to 1985; and

(3) $3,000 in reimbursement for orthodontic work done for Son in 1980.

In response and without starting a new action, Father counterclaimed for damages for Mother's tortious interference with his relationship with Son.

The trial court ruled that SDCL 15–2–13 bars Mother's claims which accrued more than six years before her 1988 action, i.e., earlier than 1982, but awarded Mother:

(1) $4,500 in back child support with interest for the period from 1982 to 1985; and

(2) $900 in back education fund payments with interest for the same period.

The court dismissed Father's tortious interference counterclaim on the basis that it failed to state a cause of action under South Dakota law.

On appeal, Mother seeks payment of all the money she claims Father owed her under the 1968 divorce decree from 1968 to 1985. Father cross-appeals the dismissal of his counterclaim and urges this court to recognize his cause of action.

### 1. Statute of Limitations

#### a. Child Support

■ The trial court held that Mother's suit was a civil action governed by SDCL 15-2-13 and that her recovery was limited to the six years before she brought suit. However, SDCL 15-2-13 does not apply in "special cases [where] a different limitation is prescribed by statute." SDCL 15-2-6 is such a statute because it provides in part: "[T]he following civil actions ... can be commenced only within twenty years after the cause of action shall have accrued: (1) An action upon a judgment or decree of any court of this state[.]"

It is well settled in this state that a divorce court has continuing jurisdiction over its decrees for alimony, separate maintenance, and custody and support of children. An application for modification or enforcement of such decree is a supplementary proceeding incidental to the original suit. It is not an independent proceeding or the commencement of a new action.

*Eggers v. Eggers*, 82 S.D. 675, 679, 153 N.W.2d 187, 189 (1967) (citations omitted). Therefore, actions to enforce the terms of divorce decrees are governed by SDCL 15-2-6, not SDCL 15-2-13, and the applicable statute of limitations is twenty years, not six years. Moreover, when the judgment provides for periodic payments rather than for a sum certain, the twenty years begins to run for each individual installment on the date when that installment becomes overdue. *Simmons v. Simmons*, 67 S.D. 145, 147, 290 N.W. 319, 320 (1940).

SDCL 25-7-7.4 provides that any support payment not made becomes a judgment by operation of law as of the date it is overdue. This statute was passed by the legislature in 1987, and the parties debate whether it has retroactive effect. We need not reach that question. Even without SDCL 25-7-7.4, Mother's order to show cause is valid to compel the payment of any periodic child support which became due during the twenty years before Mother commenced her action. The conclusion of the trial court that Mother's recovery of these periodic sums was limited to the six years prior to the commencement of her action is reversed.

#### b. Orthodontic Expenses

■ Actions which do not seek to enforce support provisions of a divorce decree, but which are based on the common law duty of parental support or on a breach of a contract claim, come under SDCL 15-2-13, and recovery is limited to six years. *State ex rel. Stearns v. Blume*, 333 N.W.2d 721, 724 (S.D.1983). Therefore, we affirm the trial court's holding that Mother's recovery of $3,000 for reimbursement for 1980 orthodontic expenses is barred, because payment of those expenses was not decreed by the 1968 judgment of divorce and the expenses were incurred more than six years before Mother commenced her action.

### 2. Estoppel

#### a. Child Support

Father argues that Mother is estopped from asserting her claim for child support and education fund payments because she concealed Son's whereabouts from 1971 until Son attained his majority.

■ The custodial parent's failure to comply with the visitation provisions of the divorce decree does not excuse the non-custodial parent's failure to comply with the child support provisions of the decree. *Todd v. Pochop*, 365 N.W.2d 559, 560 (S.D. 1985). "[S]upport obligations are independent from visitation rights.... The children's best interest requires that they be supported. Children may not be denied support or in any way punished for the sins of the custodial parent." *Stach v. Stach*, 369 N.W.2d 132, 135-136 (S.D.1985). Even

the custodial parent's disappearance with the child for a period of years does not eliminate the obligation of the non-custodial parent to pay court-ordered child support. "While wife's conduct in withholding contact with son for over seven years is abhorrent, husband's remedy lies elsewhere. Where child support is concerned, the *child's interest* is the primary consideration[.]" *Regynski v. State of Arizona,* 414 N.W.2d 612, 614 (S.D.1987) (emphasis original).

Despite wide acceptance of these principles, many jurisdictions have held that, under certain circumstances, a custodial parent may be estopped from seeking court-ordered child support from the non-custodial parent. The circumstances include the following:

(1) The custodial parent has concealed the whereabouts of the child from the non-custodial parent for an extended period of years.

(2) The child has attained majority, so that its best interests and need for ongoing support are no longer at issue.

(3) It is the custodial parent who is in court seeking support arrearages, not a state social services agency which cannot be estopped by the actions of the custodial parent.

*See, e.g. State of Washington ex rel. Burton v. Leyser,* 196 Cal.App.3d 451, 241 Cal. Rptr. 812 (Cal.App. 5th Dist.1987); *Anthony v. Anthony,* 204 N.W.2d 829 (Iowa 1973). The facts in *Burton* were similar to the present case and the California court reasoned that the husband's complete lack of information about where his ex-wife and children were living deprived him of all legal remedies for violation of his visitation rights. Therefore, the court held that the

mother "intentionally" waived her known right to child support during the period of her and the children's concealment, and that she was estopped from seeking to enforce payments which were not made by the father during that period.

In this case, Father missed all periodic child support payments and education fund payments between 1968 and 1985, when Son attained his majority. Mother concealed herself and Son since 1971. Although the statute of limitations does not bar Mother's recovery of arrearages within the twenty years prior to the commencement of her 1988 action, based on the present record, we are inclined to believe that Mother's concealment of Son waived her right to receive the $125 monthly child support payments from 1971 on, but not from 1968 to 1971.[1] However, we defer these determinations to the trial court pending consideration of all the evidence on these issues, along with Father's claims, as discussed in section 3 *infra.*

b. Education Fund Payments

The $25 monthly education fund payment for Son's benefit stands on different footing. Mother's concealment of herself and Son did not affect Father's obligation to make the payment because the payment was not to be made directly to Mother nor for her benefit. The fund was for the benefit of Son, and Son is now an adult. It is for Son to decide whether to pursue the money Father owes for his education.

3. *Father's Cause of Action Against Mother*

The trial court concluded that "[d]efendant's counterclaim for tortious interfer-

---

**1.** The equitable maxim that "he who comes into equity must come with clean hands" also permits a court, on its own motion, to prevent a plaintiff guilty of inequitable conduct from obtaining equitable relief. 27 Am.Jur.2d *Equity* § 136 (1966). This is so even when the defendant has acted wrongly and the plaintiff would otherwise be eligible for the relief requested. 30 C.J.S. *Equity* § 93 (1965). South Dakota has recognized this "clean hands" doctrine. *Rehfeld v. Flemmer,* 269 N.W.2d 804, 807–808 (S.D. 1978). Surrounding states which also recognize it have applied it to parties seeking equitable

relief in connection with child support and child custody provisions in divorce judgments. *Froats v. Froats,* 415 N.W.2d 445 (Minn.App. 1987); *Voichoskie v. Voichoskie,* 215 Neb. 775, 340 N.W.2d 442 (1983); *Jordana v. Corley,* 220 N.W.2d 515 (N.D.1974). However, the "clean hands" doctrine only bars actions which are equitable in nature. 30 C.J.S., *supra,* § 98. Mother's action is not equitable, but legal. It is an order to show cause to enforce a judgment which has full legal effect. Therefore, the "clean hands" doctrine does not apply.

ence of a parent/child relationship fails to state a cause of action and shall be dismissed." Father argues that his counterclaim states a cause of action under South Dakota law under: (1) alienation of affections; (2) intentional infliction of emotional distress; or (3) tortious interference with the parent/child relationship.

In South Dakota, "[a]ll courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law[.]" S.D. Const., Art. VI, § 20. "Every person has, subject to the limitations provided by law, the right of protection from ... injury to his personal relations, and every person is bound, without contract, to abstain from injuring any such right of others[.]" SDCL 20-9-6.

Furthermore, even though many jurisdictions have abolished alienation of affections as a recognized cause of action, this court has expressly declined to do so. *Hunt v. Hunt*, 309 N.W.2d 818 (S.D.1981). The cause of action is also secured by statute. SDCL 20-9-7 provides in part: "The rights of personal relation forbid: ... (2) The abduction or enticement of ... a child from a parent[.]"

"The essential elements of a cause of action for alienation of affections are: (1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) a causal connection between such conduct and loss." *Hunt v. Hunt*, 309 N.W.2d at 820 (citing *Morey v. Keller*, 77 S.D. 49, 85 N.W.2d 57 (1957)). *See also Pickering v. Pickering*, 434 N.W.2d 758, 762–763 (S.D.1989); *Pankratz v. Miller*, 401 N.W.2d 543, 546 (S.D. 1987). Cf. *Strode v. Gleason*, 9 Wash.App. 13, 510 P.2d 250, 251 (1973).

The question presented is not whether a cause of action for alienation of affections exists in South Dakota, for clearly it does, but whether it may be asserted by a parent who claims to have lost the affections and consortium of his child. Mother admits that *Mackintosh v. Carter*, 451 N.W.2d 285 (S.D.1990), does not foreclose Father's cause of action because the question was not reached. *Mackintosh* held that the evidence was insufficient to support the

elements of the tort even assuming the cause of action existed, and noted that only one jurisdiction "appears to have recognized this tort, *absent an actual abduction or kidnapping.*" *Mackintosh*, 451 N.W.2d at 288 (emphasis added).

Most of the jurisdictions which have rejected a parent's cause of action for alienation of affections, or for intentional infliction of emotional distress, have done so when the cause of action was based on simple interference with visitation rights. In general, the reasoning has been that it is neither in the best interests of the child nor in the best interests of the judicial system to encourage the use of this tort in the context of child custody and visitation battles when other legal remedies are already available. *See e.g., Gleiss v. Newman*, 141 Wis.2d 379, 415 N.W.2d 845 (Wis.App. 1987); *Owens v. Owens*, 471 So.2d 920 (La. App. 2d Cir.1985).

When the issue is not merely interference with visitation rights but the complete removal of the child from the complaining parent's life, courts are far more willing to hold that the parent has a cause of action against the removing parent, even in cases where the removing parent is the custodial parent. *See e.g., Raftery v. Scott*, 756 F.2d 335 (4th Cir.1985); *Ruffalo v. United States*, 590 F.Supp. 706 (W.D.Mo.1984); *Kajtazi v. Kajtazi*, 488 F.Supp. 15 (E.D.N.Y.1978); *Plante v. Engel*, 124 N.H. 213, 469 A.2d 1299 (1983); *Sheltra v. Smith*, 136 Vt. 472, 392 A.2d 431 (1978); *Pankratz v. Willis*, 155 Ariz. 8, 744 P.2d 1182 (Ariz. App.1987). Some courts have even been willing to recognize a cause of action for alienation of a child's affections or intentional interference in the parent/child relationship when the facts are less extreme than complete removal of the child from the complaining parent's life. *See e.g., Bhama v. Bhama*, 169 Mich.App. 73, 425 N.W.2d 733 (1988); *Dymek v. Nyquist*, 128 Ill.App.3d 859, 83 Ill.Dec. 52, 469 N.E.2d 659 (Ill.App. 1st Dist.1984).

As the *Ruffalo* court observed:

The argument against encouraging damage claims for petty infractions of parental rights is not pertinent to the

facts of this case. The state courts could well restrict this type of claim to situations that are not "insubstantial in duration and effect".... In any event, trifling departures from court orders relating to visitation doubtless already plague the state courts in contempt cases, and the possibility of truly petty damage suits does not argue persuasively against recognition of a right to sue. On the contrary, there are specialists in family law who view the potential of damage suits as a useful deterrent to lawless conduct.

*Ruffalo v. United States*, 590 F.Supp. at 712 (citing Hoff, "Interstate Child Custody Disputes and Parental Kidnapping: Policy, Practice and Law" (Legal Services Corporation—ABA 1982), pages 14–15).

■ In the present case, Mother kept Son's whereabouts a secret from Father for some fourteen years. Son is now an adult. That fact eliminates the three policy considerations usually advanced for refusing to recognize the cause of action: best interests of the child; availability of other remedies; and opening the floodgates to ongoing custody and visitation battles. Therefore, we hold that Father states a cause of action in tort against Mother for alienation of Son's affections. We need not and do not reach the question of whether Father also states a cause of action for intentional infliction of emotional distress or tortious interference with the parent/child relationship.

■ Nevertheless, we affirm the trial court's dismissal of Father's counterclaim against Mother for alienation of Son's affections *in this action to show cause*—without prejudice to Father's right to bring said claims against Mother within the applicable statute of limitations period. As indicated above, this order to show cause is not a new cause of action, but simply an action for the enforcement of a prior judgment. 24 Am.Jur.2d *Divorce and Separation* § 806 (1983). While a defendant may petition for a modification of support obligations in response to plaintiff's show cause order to enforce support obligations, *Rousseau v. Gesinger*, 330 N.W.2d 522, 525

(S.D.1983), the proper subject matter in an action to enforce a prior judgment is nevertheless limited to the subject matter of the prior judgment. *Forkel v. Forkel*, 387 N.W.2d 52, 53 (S.D.1986); *Eichenberger v. Eichenberger*, 279 N.W.2d 690, 691 (S.D. 1979); *Cameron v. Cameron*, 31 S.D. 335, 340–341, 140 N.W. 700, 702 (1913). The relief available to either party under a show cause order is "necessarily incidental to, and not entirely distinct from, that specifically asked." *In re Carter*, 262 N.C. 360, 137 S.E.2d 150, 156 (1964). Defendant cannot assert a counterclaim for a new cause of action in response to an order to show cause.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

MILLER, C.J., concurs.

WUEST and HENDERSON, JJ., and MORGAN, Retired J., concur in part and dissent in part.

AMUNDSON, J., not having been a member of the court at the time this case was argued, did not participate.

WUEST, Justice (concurring in part and dissenting in part).

I concur, but would not reach the issue of whether the Father may bring an alienation of affection action in this proceeding. He counterclaimed in a show cause proceeding which the majority has held procedurally improper, with which I agree. That holding answered the issue in this case and we should refrain from addressing hypothetical cases or issues which may arise in the future. If and when the Father brings a separate action, we may then address the issue. Now, that issue is premature.

HENDERSON, Justice (concurring in part and dissenting in part).

As a cause of action, alienation of affections survived under a majority vote of 3–2 in *Hunt v. Hunt*, 309 N.W.2d 818 (S.D. 1981). I wrote the "majority" opinion in this action but then Chief Justice Roger Wollman, now Eighth Circuit Court of Ap-

peals Judge, joined that aspect of my writing which would abolish a cause of action for alienation of affections in South Dakota. My rationale is expressly set forth in *Hunt.* I do not wish to swerve from the reasoning set forth therein, as joined by then Chief Justice Wollman. I agree that the alienation of affections suit in this proceeding, was procedurally improper, which I understand to be the holding under the writing of Justice Sabers. In my opinion, the dissertation on alienation of affections should end there, as Justice Wuest has written, for if the alienation of affections action is dismissed as the result of our affirmance of the trial court's decision, the action has simply not survived and we need not reach any further in our legal dissertation, as Justice Wuest has written, because we are adjudicating upon a matter which has been decided and we are attempting to write upon a case that *might* arise in the future.

I likewise agree with Justice Morgan that the Appellant certainly has brought her action, into the courts of this state, with unclean hands, and she should not be able to garner child support for having secreted the parties' son from the father. This would be very unjust and establish a bad precedent. *Stach v. Stach,* 369 N.W.2d 132, 136 (S.D.1985). It should be emphasized that she is seeking this money for herself. Therefore, I would, also, reverse the award and remand to the trial court to dismiss the proceedings.

Lastly, I concur on the educational fund payments for, essentially, the rationale set forth in Justice Sabers' writing.

MORGAN, Retired Justice (concurring in part and dissenting in part).

On Mother's claim in this proceeding, I would simply reverse the award and remand to the trial court to dismiss the proceedings. Mother is not now asking for support for the child, he having attained his majority. She is asking, in effect, to be reimbursed for the support she furnished while she had the son secreted away from his father. By her egregious conduct, in violating and thwarting the court-ordered visitation over a fourteen-year-period, this woman does not have clean hands to the extent that it precludes the courts from granting her any relief. *Müller v. County of Davison,* 452 N.W.2d 119, 121–22 (S.D. 1990); *Stach v. Stach,* 369 N.W.2d 132, 136 (S.D.1985). Therefore, I dissent on that issue. This would not preclude the son from bringing his own action on the educational fund, nor does it preclude Husband from properly commencing his action as suggested by the majority, and my concurrence is with both of these issues.